## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| | Civil No. 11-3370 (JNE/JSM) |
| Carol M. Ness, individually, and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| vs. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' GURSTEL CHARGO, P.A., TEM CAPITAL, LLC, TODD GURSTEL, AND MITCH CHARGO MOTION TO DISMISS** |
| Gurstel Chargo, P.A., TEM Capital, LLC, Todd Gurstel, Mitch Chargo, and John/Jane Does 1-20, | |
| Defendants. | |

## I.      INTRODUCTION

Tem Capital, LLC, ("TEM") buys delinquent debt from credit card companies.  In June 2010, TEM purchased the debt of account holders who were issued credit cards by Wells Fargo Bank.  Included in TEM's purchase was Plaintiff's delinquent Wells Fargo credit card account.  In September 2010, TEM brought an action in Hennepin County District Court to recover the amount due on Plaintiff's account.  Both sides moved for summary judgment.  After reviewing the parties' submissions and hearing oral argument, the Honorable Ann Alton concluded that although TEM submitted affidavit testimony that it owned the debt, copies of the bills of sale showing the sale of Wells Fargo accounts to TEM, and copies of Plaintiff's specific account statements with Wells Fargo,

1

TEM needed more to establish its ownership of Plaintiff's account.  TEM attempted to introduce the spreadsheet which was part of the sale of debt showing Plaintiff's account, but failed to properly authenticate the document.  Judge Alton dismissed the matter without prejudice, and explained to Plaintiff that when TEM is able to establish ownership of the debt, they could bring the action again.

Plaintiff is now before this Court trying to parlay Defendants' failure to authenticate the spreadsheet document into a class-action lawsuit alleging lies, deceit, and fraud.  The Complaint in this case is filled with conclusory statements and summary phrases accusing the Defendants of "conspiracy" to obtain "fraudulent" judgments through "deceit" and "misrepresentation", and injects the buzzwords of "alter ego" and "fictitious client".  But the Complaint is barren of any <u>facts</u> to support these conclusions.

There are no <u>facts</u> that any conspiracy, deceit or fabrication existed.  There are no <u>facts</u> that support Plaintiff's two central claims:  (1) that Defendants deceived Plaintiff about TEM's ownership of the debt; and (2) that Defendants created a fictitious client to further that deception.  Plaintiff relies on the state court proceeding as "factual" support for its contentions.  Judge Alton, however, made no such finding nor inferred that any deceit or fraud on the Court had occurred.  Indeed, Judge Alton dismissed the matter without prejudice and underscored that the matter could be brought again with the proper authentication of the spreadsheet document.  All of Plaintiff's remaining allegations are either editorial comment about the collection industry generally or directly contradicted by the documentary record.  The Complaint falls woefully short of the pleading requirements set forth in <u>Ashcroft v. Iqbal</u>, 129 SCourt 1937, 1949, 173 L. Ed. 868

(2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 SCourt 1955, 167 L. Ed. 929 (2007).

Plaintiff's only federal claim is for violation of the Fair Debt Collection Practices Act ("FDCPA") by falsely attesting to ownership of a debt.   Plaintiff's reliance on the result in the state court proceeding as "proof" of fraud and deceit is misplaced.   This same type of argument has been recently rejected by this Court.   Plaintiff has no additional support.   The law is well established that bringing a collection action and failing to prove ownership of a debt is not, without more, a violation of the FDCPA, and none of the cases from foreign state jurisdictions cited in Plaintiff's Complaint hold otherwise.

The bringing of this lawsuit is an abuse of the FDCPA.   It is an example of a practice the federal courts have rightly condemned.   Judge Richard Posner, rejecting an attempt to certify a class action under similar circumstances, lamented "the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed."   See White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000).   The Complaint in this action should be dismissed.

## II.   <u>FACTS</u>[1]

Defendant TEM Capital, LLC ("TEM"), is a Minnesota limited liability company engaged in the business of purchasing delinquent consumer debt.   Complaint, ¶ 17. Defendant Gurstel Chargo, P.A. ("GC") is a Minnesota law firm, and Defendants Todd Gurstel ("Gurstel") and Mitch Chargo ("Chargo") are the principals of TEM and GC. Complaint, ¶¶ 16, 18, and 19.

On June 17, 2010, TEM purchased the debt of account holders who were issued credit cards by Wells Fargo Bank, including Plaintiff's delinquent account.[2]   TEM

---

[1]   In ruling upon a Rule 12 motion to dismiss, the Court may consider materials outside the pleadings that are referenced in and thus necessarily embraced by the pleadings, items appearing in the record of the case and matters of public record, and such consideration does not convert the motion to dismiss into a motion for summary judgment.   <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999), (proper to rely on transcript from earlier proceedings between same parties); <u>Piper Jaffray Cos., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 967 F.Supp. 1148, 1152 (D. Minn. 1977); (proper to consider insurance policies referenced in complaint); <u>Fudge v. Penthouse International</u>, 840 F.2d 1012 (1st Cir. 1988); (proper to consider magazine article central to libel claim); <u>Vizenor v. Babbitt</u>, 927 F.Supp. 1193 (D. Minn. 1996); (proper to consider tribal constitutions), citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §1327, at 762-63 (2ed. 1990), "[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading").

In support of the present Motion, Defendants have submitted copies of the pertinent court filings from the state court action referenced throughout the Complaint. As all of these documents are either directly quoted from, identified or referenced in the Complaint, they constitute "material necessarily embraced by the pleadings," as well as being publicly filed documents.   Accordingly, the Court's consideration of them is proper and does not serve to convert this Rule 12 motion into a motion for summary judgment under Fed. R. Civ. P. 56.

[2]   Plaintiff was granted a name change on September 22, 2011, changing her name from Carol Marylind Elkins to Carol Marylind Ness.   Complaint ¶ 15.

purchased the accounts from Absolute Resolution Corporation ("ARC"), who had purchased the accounts from Wells Fargo on April, 13, 2010.   The purchases are documented by bills of sale, first from Wells Fargo to ARC and then from ARC to TEM.[3] Affidavit of Mark J. Kiperstin ("Kiperstin Aff."), ¶ 2; Ex. 1.

On September 24, 2010, Plaintiff was served with a summons and complaint venued in Hennepin County District Court, seeking to recover the delinquent debt.  See Kiperstin Aff., ¶ 3; Ex. 2.[4]  The state court complaint alleges, inter alia, that TEM is the owner of certain accounts of Wells Fargo Bank, including Plaintiff's account, that Plaintiff has failed to pay the amount due on her Wells Fargo account, and that Plaintiff had not made any objection to any of the charges on her account.  Id.

Plaintiff's answer to the complaint was due on October 14, 2010, 20 days from the date of service.  Minn. R. Civ. P. 12.01.  Plaintiff did not serve an answer within the proscribed time period and, on October 22, 2010, GC filed papers with the Hennepin County District Court requesting entry of a default judgment.  See Kiperstin Aff., ¶ 4; Ex. 3.[5]  On November 10, 2010, a default judgment was entered by administrative action. See Kiperstin Aff., ¶ 5; Ex. 4.[6]

Subsequent to the request for entry of the default judgment, GC became aware that Plaintiff served an answer, which had been received in the offices of GC the same day

---

[3]    The bills of sale are referenced at paragraph 32 of the Complaint.

[4]    Referenced at paragraphs 24-25 and paragraph 40 of the Complaint.

[5]    Referenced at paragraph 36 of the Complaint and throughout the Complaint.

[6]    Default judgment referenced throughout the Complaint.

that the default papers were mailed to the district court administrator.  Complaint ¶ 41. Although Plaintiff's answer was served beyond the time proscribed in the rules, TEM agreed to have the judgment vacated, which was vacated by Judge Alton on April 18, 2011.  See Kiperstin Aff., ¶6; Ex. 5.[7]

The case proceeded and the parties brought cross motions for summary judgment. In support of its motion, TEM submitted the affidavit of Defendant Gurstel, which he signed explicitly as a member of TEM.  See Kiperstin Aff., ¶7; Ex. 6[8].  Defendant Gurstel states in his affidavit:

- TEM is the assignee of certain accounts of Wells Fargo Bank, N.A., including the account of Carol Elkins, (attaching copies of the bills of sale from Wells Fargo to ARC and from ARC to TEM);

- TEM purchased the accounts only after receiving a representation that the seller of the accounts was the valid owner of the Carol Elkins account;

- Carol Elkins is the holder of a credit account originally issued by Wells Fargo Bank, N.A., with the account number ****3745, (attaching copies of Plaintiff's Wells Fargo credit card statements);

- At no time did Ms. Elkins notify TEM that she disputed any of the charges on her account; and

- Ms. Elkins failed to pay the outstanding debt to Wells Fargo Bank.

---

[7]     Default judgment referenced throughout the Complaint.

[8]     Summary Judgment Motion referenced in Paragraphs 24, 32 and 65 of the Complaint.

In its papers opposing Plaintiff's summary judgment motion, TEM explicitly discloses that Defendant Gurstel is a principal owner of both TEM and GC.  See Kiperstin Aff.,¶ 8, Ex. 7.[9]

The motions were argued on September 12, 2011, before the Honorable Ann L. Alton, Judge of Hennepin County District Court.  During the hearing the ownership of TEM was raised, to which Michael Johnson, the GC attorney representing TEM, responded:

> TEM is a completely separate corporate entity from the partnership of Gurstel Chargo.  The fact that the ownership is the same, the fact the address is the same doesn't change the fact they're separate corporate entities and that is allowed under the Rules of Professional Conduct.  It's not a misrepresentation.  In our discovery responses, they were signed by Mr. Gurstel.  Mr. Gurstel was listed as a witness. The affidavit we submitted to the Court on behalf of TEM was signed by Mr. Gurstel. There's been no hiding of the ball here. We've been very clear that Mr. Gurstel owns this company.  He owns the debt and it's proper for my law firm to represent him.  See Kiperstin Aff., ¶ 9 Ex. 8, page 14.[10]

At the hearing, Mr. Johnson provided Judge Alton with a spreadsheet identifying the accounts transferred to TEM, which specifically identifies Plaintiff's account.  See Kiperstin Aff., Ex. 8, page 4.   After reviewing the spreadsheet, together with the bills of sale and account statements previously submitted, Judge Alton concluded that the spreadsheet had not been properly authenticated, and therefore determined that TEM, at that juncture, had not established ownership of the debt. Id., page 15. Because the

---

[9]     Summary Judgment Motion referenced throughout the Complaint.

[10]    Transcript quoted at paragraphs 24 and 42 of the Complaint.

deadline for discovery had expired, thereby precluding TEM from supplementing the record, Judge Alton dismissed the case without prejudice, advising Plaintiff that TEM "can bring the action again" when it can establish ownership of the debt. Id.

On September 26, 2011, Judge Alton issued Findings of Fact, Conclusions of Law. And Order Dismissing Complaint Without Prejudice. See Kiperstin Aff., ¶10; Ex. 9.[11] Judge Alton's order mirrors the basis for the dismissal she stated at the summary judgment hearing, that is, without documentary evidence of the specific chain of assignment of the specific account at issue, TEM was unable to prove its claims, and because discovery was over, the matter was dismissed without prejudice. Id. Judge Alton's Order contains no findings that the Defendants engaged in fraud or deception, and no findings that the Defendants made any misrepresentation to either the Plaintiff or the court. Id.

On November 17, 2011, less than two months after Judge Alton's Order, Plaintiff filed the present Complaint, in which the Plaintiff cites no facts beyond those set out above in support of their repeated assertions of fraud and deception.

## III.  ARGUMENT

Deception, fraud and misrepresentation are at the foundation of all of Plaintiff's causes of action.  The Complaint alleges deceit regarding TEM's ownership of the subject debt and deceit by omission regarding the relationship between the Defendants. Plaintiff fails to allege facts which, even accepted as true, support these conclusory and summary accusations, as mandated by the Supreme Court in order to survive a motion to

---

[11]     Order quoted at paragraph 34 of the Complaint.

dismiss.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 868 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed 929 (2007). Moreover, the Complaint fails to allege facts that establish the necessary elements of her claims, in particular her claim under The Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's Complaint consists of a series of vague, conclusory and unsupported allegations, repeated over and over again and renamed into ten causes of action. Plaintiff's allegations are both factually inaccurate and legally inadequate.  For the reasons set forth below, the Court should dismiss this matter in its entirety.

**A.     Standard of Review.**

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court considers as true all factual allegations in the complaint, giving no effect to conclusory allegations of law.  Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citation omitted).  To survive a motion to dismiss, however, a complaint must provide more than  "labels and conclusions" or a "formulaic recitation of the elements of a cause of action…."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed 929 (2007).

Rather, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id.  (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Where a complaint pleads only alleged conduct without

"further factual enhancement [,] it stops short of the line between possibility and plausibility," and therefore, must be dismissed.  <u>Twombly</u>, 550 U.S. at 557.  Finally, a court need not accept the legal conclusions drawn from the facts nor accept as true unwarranted inferences, unreasonable conclusions, or arguments.  <u>Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.</u>, 213 F.3d 175, 180 (4th Cir. 2000).

**B.**   **<u>Plaintiff Has Failed to State a Claim For Relief Under The FDCPA.</u>**

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 <u>et seq</u>., was enacted in order to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).  The FDCPA separates covered abusive practices into three sections:

- 15 U.S.C. § 1692d, which forbids debt collectors from engaging in " any conduct the natural consequence of which is to harass, oppress, or abuse any person";

- 15 U.S.C. § 1692e, which forbids debt collectors from making any "false, deceptive, or misleading misrepresentation"; and

- 15 U.S.C. § 1692f, which forbids debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."

While it is unclear from the Complaint which provisions of the FDCPA Plaintiff claims the Defendants have violated, it appears that the focus of this case relates to deception, fraud and misrepresentation, which are addressed in §1692 (e) of the Act.

**1.  <u>Section 1692 (e).</u>**

Under §1692 (e), entitled, "False or misleading representations," a debt collector may not "use any false, deceptive, or misleading representation or means in connection

with the collection of any debt."   There are no facts alleged in the Complaint or in the

record before the Court to state a claim that the Defendants engaged in any of the conduct

prohibited under 1692 (e).

Stripped of inflammatory and conclusory buzzwords, Plaintiff's claim can be

reduced to two principal allegations:

- That Defendants deceived the Plaintiff and the court by falsely claiming that
  TEM was the owner of Plaintiff's debt when TEM did not own the debt and
  had no documents to substantiate its ownership of the debt. (see Complaint ¶¶
  5, 11, 29-36, 65C-E); and

- That Defendants deceived Plaintiff and the Court by not disclosing that the
  owners of TEM are the same as the owners of GC (see Complaint ¶¶ 3, 8, 23-
  24, 47, 65A)

Because Plaintiff has failed to allege facts to satisfy the pleading standards of

Iqbal and Twombly, and failed to allege facts to state a claim for deception under §1692

(e), her Complaint fails.

     **a.**     **Plaintiff's allegations that TEM made false, deceptive or misleading
statements related to the ownership of Plaintiff's debt fail.**

Plaintiff alleges that TEM was without proof of ownership of Plaintiff's debt and

had no legal right to take any action to collect the debt.   Complaint ¶ 65.  This is patently

false.  TEM possessed and submitted substantial documentation, including:

- The bills of sale evidencing transfer of Wells Fargo accounts to TEM;

- The credit card statements of Plaintiff's account with Wells Fargo;

- Explicit sworn representations regarding its ownership of the debt; and

- A spreadsheet identifying Plaintiff's account as one of the Wells Fargo accounts TEM purchased.

Plaintiff leaps to the conclusion that because the state court did not accept the authentication of the spreadsheet and the matter was dismissed without prejudice, that Defendants committed deception and fraud upon Plaintiff and the court, all in violation of § 1692 (e).  Plaintiff's leap is misplaced.  It is contrary to law.  See Hemmingsen v. Messerli & Kramer, P.A., No. 09-1384, 2011 WL 494941 (D. Minn. Feb. 7, 2011) (Doty, J.).

In Hemmingsen, a case decided by this Court earlier this year, Judge Doty ruled it is not a deceptive practice to press a suit that may ultimately be dismissed, even with prejudice, on summary judgment.    There, the plaintiff debtor denied liability on a credit card account on which both she and her ex-husband's name appeared.  In the collection action, both sides moved for summary judgment, and the state court granted the debtor's motion and denied the creditor's motion.  Id. at *1-2.  The debtor then filed suit in federal court claiming a violation of the FDCPA and alleging "that M&K harassed her and employed unfair practices by maintaining the state court action and moving for summary judgment 'despite having absolutely no evidence tying her to'" the debt.  Id. at *2.  In fact, however, the record indicated that there was evidence tying plaintiff to the debt.  Id. Judge Doty concluded: "The fact that the state court denied [the debt collector's] summary judgment motion and granted [debtor's] does not, on its own, indicate that [the debt collector] harassed her or used unfair practices to collect the debt."  Id.

Here, TEM presented more evidence that TEM had a right to collect the debt than was present in Hemmingsen. In Hemmingsen, the debt was not even tied to the alleged debtor.   Here, the debt is not disputed and substantial evidence was submitted establishing ownership of the debt.

The courts in other jurisdictions have reached the same conclusion as in Hemmingsen.   See   Harvey v. Great Seneca Financial Corp., 453 F.3d 324 (6th Cir. 2006).   In Harvey, the debtor alleged that the debt collector had violated the FDCPA by filing "a lawsuit to collect a purported debt without the means of proving the existence of the debt, the amount of the debt, or that Seneca owned the debt." Id. at 325.  The Sixth Circuit held that these allegations, if proven, constituted neither harassment under § 1692d, id. at 330-31, nor deception under § 1692e (10), id. at 331-33.  In particular with respect to deception, the Court of Appeals noted that Harvey did not deny that she owed the debt, id. at 332, and stated that the creditors "did not implicitly represent by filing the Complaint for Money that they had in hand the means to prove [the creditor's] claims." Id. at 333.  Furthermore, "a debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim.   [The creditor's] alleged actions, therefore, did not misrepresent the legal character of the debt owed." Id.  See also Johnson v. BAC Home Loans Servicing, LP, No. 5:10-CV-303-F, 2011 WL 4544013, at *8-10 (E.D.N.C. Sept. 29, 2011) (initiation of mortgage foreclosure proceedings without supporting documentation was neither harassing under § 1692d nor deceptive under § 1692e); Eichman v. Mann Bracken, LLC, 689 F. Supp. 2d 1094, 1100 (W.D. Wisc. 2010) ("the mere filing of a counterclaim to recover an alleged debt does not

constitute harassment or deception just because the debtor alleges that the creditor has failed to adduce sufficient evidence of the existence of the debt"); Nickoloff v. Wolpoff & Abramson, LLP, 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007).

Boxed in by the established case law, Plaintiff pads her Complaint with sweeping allegations about the collection industry without establishing any specificity to the Defendants as required by Iqbal and Twombly.   Plaintiff makes general statements about the practices of "debt-buyers such as TEM" without tying TEM to such conduct.   For example, Plaintiff states that the contents of debt portfolios purchased by debt collectors "typically" contain certain account and debt information, Complaint ¶ 28, but they "generally do not purchase documentation of the indebtedness between the original creditor and consumer."   Id. ¶ 29.    Likewise, Plaintiff claims that "many credit agreements … do not allow reassignment."  Id. ¶ 30.

Even if these allegations about the debt buying world were true, they don't state, as required under Iqbal and Twombly, anything about the specific acts engaged in by these Defendants.   There is no allegation that TEM did not purchase documentation of the indebtedness between Plaintiff and Wells Fargo – nor could there be, because TEM presented, with defendant Gurtsel's affidavit, that very documentation, including copies of the Plaintiff's actual account statements from Wells Fargo.   Moreover, Plaintiff does not allege that the credit agreement between Plaintiff and Wells Fargo – the only credit agreement relevant to Plaintiff's claims – did not allow reassignment.   Whether other agreements allow reassignment is simply irrelevant.

In addition to the foregoing sweeping allegations, Plaintiff alleges facts that are directly contradicted by the court record:

- Plaintiff claims that Defendants "misrepresent that TEM directly purchased consumer debt from the original creditors."  Compl. ¶ 4; see also id. ¶¶ 25-27. In fact, the pleadings and affidavits in the state court action contain no such representation, and in fact TEM explicitly disclosed that it was not the original assignee.  See state court complaint ¶ 1 (Ex. 2 to Kiperstin Aff); Gurstel Aff. ¶ 3 & Exs. (Ex. 6 to Kiperstin Aff).

- Plaintiff asserts that by failing to delineate the entire chain of ownership in the state court complaint, Defendants have engaged in "deceit by omission." See Compl. ¶ 25-27.  That position is without any support in the law, including the case cited by Plaintiff.  In In re Leverett, 378 B.R. 793 (Bankr. E.D. Tex. 2007), the court held that the claimant had not established that it owned a particular debt, not that failure to present a chain of custody was somehow deceitful.  Id. at 799-804.

- Plaintiff alleges that after obtaining default judgments, "upon information and belief," Defendants allegedly wrongfully enforce those default judgments. Compl. ¶ 6.  Here Plaintiff ignores the fact that the default judgment against her was vacated. (See Kiperstin Aff; Ex. 5).  Compl. ¶ 34.  Thus there was no action taken against Plaintiff to enforce any judgment.

- Perhaps most patently contradicted by the record is Plaintiff's allegation that Defendants "deceptively procured a default judgment" against Plaintiff by submitting a no-answer affidavit "three-days after receipt of the answer." Complaint ¶ 39.  Although Plaintiff alleges that the Answer was received by GC on October 22, 2010, id. ¶ 41 and that the no-answer affidavit was submitted by cover letter dated October 25, 2010, id. ¶ 45, in fact that letter was dated October 22, the exact date the answer was received, (See Kiperstin Aff; Ex. 3) which is fully consistent with the documents crossing in the mail.

As all of these allegations are contradicted by the record, and cannot be considered "facially plausible" as required by Iqbal and Twombly, they cannot be accepted as true for purposes of this Motion.

Finally, because she has no facts to support a claim of deception under 1692 (e), Plaintiff is left with the bald accusation that Defendants have made things up.  Plaintiff alleges that Defendants "manufactured" the account spreadsheet provided to Judge Alton, Complaint ¶ 31, and refer to it repeatedly as a "fabricated document."  Id. ¶¶ 32, 33 & heading preceding ¶ 31.  These pejorative accusations are made against lawyers, officers of the court, without a single shred of factual support.  Indeed, the transcript of the hearing before Judge Alton demonstrates that Plaintiff has no evidentiary basis for her brazen accusation.  Plaintiff's counsel stated that he had "never received" the exhibit, (See Kiperstin Aff; Ex. 8, page 4), that he had "never seen it," (Id., page 6), and that he had "no idea what it is," (Id.), but he nevertheless represented to the Court that "I believe that it's an internal document that's generated by Gurstel Chargo not the actual Exhibit

A." (Id., page 4). Of course, Plaintiff's counsel could not have any reason to believe <u>anything</u> about a document that he had never seen. The only indication in the record about the character of the exhibit is counsel for TEM, stating that "We do not create that document in-house. It's what we get or what TEM Capital gets from Absolute." (Id., page 7).

In sum, the "facts" Plaintiff alleges regarding her claim that Defendants deceived her and the court as to its ownership of the debt fall into four groups: the allegations related to the documents TEM submitted in the state court action; the sweeping, general allegations regarding the debt buying world; the allegations directly contradicted by the record; and the allegations that Defendants fabricated the account spreadsheet. None of these subsets of facts satisfy the pleading requirements of Iqbal and Twombly, and each set underscores the words of Judge Posner regarding "the all-too common abuse of the class action as a device for forcing the settlement of meritless claims and thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed." See White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000).

### b. Plaintiff's allegations that Defendants made no false, deceptive, or misleading statements relating to the ownership of TEM and GC fail.

Plaintiff alleges deceit by omission regarding the relationship between TEM and GC, and claims that TEM is not the real party in interest but rather is the "alter ego" and "fictitious client" of GC. Complaint ¶ 3; see also ¶¶ 23-24 & passim (referring to TEM as an "alter ego" and/or "fabricated client"). This broad allegation of alter ego is not supported by any facts.

In support of her alter ego claim, plaintiff alleges, "upon information and belief", that:

- TEM is wholly owned by Gurstel Chargo shareholders and owners, including Gurstel and Chargo (Complaint ¶ 21);

- TEM is a mere instrumentality of Gurstel Chargo, and Gurstel and Chargo, and all of the profits of TEM flow directly to Gurstel Chargo, and Gurstel and Chargo (Complaint ¶ 21); and

- Defendants do not disclose the ownership of TEM, which Plaintiff claims makes TEM an "alter ego, a fabricated client."  Complaint ¶ 3; <u>see also</u> ¶¶ 23-24 & <u>passim</u> (referring to TEM as an "alter ego" and/or "fabricated client").

None of these allegations establish alter ego.   Under Minnesota law, before a court can find that a corporate entity is the alter ego of either its owners or another entity, a two-prong test must be satisfied. <u>See Victoria Elevator Co. v. Meriden Grain Co</u>., 283 N.W.2d 509, 513 (Minn.1979).  The first prong requires a finding that several factors exist out of a list of factors (insufficiency of capitalization, failure to observe corporate formalities, failure to pay dividends, insolvency, siphoning of corporate funds, non-functioning officers and directors, lack of corporate records, the corporation's existence as a mere façade for individual dealings) tending to indicate that a corporate entity is a sham and exists in form only.  <u>Id.</u>  If a <u>number</u> of these factors are present, this first prong is met.  Here, Plaintiff has not alleged <u>any</u> of these factors.  Plaintiff only alleges that

TEM is wholly owned by the owners of GC. But common ownership alone is not sufficient to establish alter ego.

The second prong requires a finding that the entity is used as an instrumentality to perpetuate fraud, justify wrong, avoid litigation or escape liability for what are in substance the acts of the bad actor. Victoria Elevator, 283 N.W. 2d 509, 513. See also Consolidated Sun Ray, Inc. v. Oppenstein, 335 F.2d 801, 806 (1964) ("It takes more than a showing of an interlocking directorate. . . in all of the affiliated organizations to break down the separate entity of each, and such showing would have to be that such connection or affiliation was used to perpetuate a wrong."). The question is not whether there is an intercorporate affiliation between entities, but rather, whether such relationship was used to perpetuate a fraud or promote injustice. Here, Plaintiff has not pled any facts to satisfy the second prong, i.e., that TEM was used as an instrumentality of GC to perpetuate fraud. TEM sued to collect on a debt. The state court determined that TEM did not prove ownership of the debt and dismissed the case without prejudice. There was no bad act, merely a lost lawsuit. The alter ego doctrine simply does not apply to this situation.

In addition, even if there were evidence of an "alter ego", nothing was concealed regarding the relationship between TEM and GC. Defendant Gurstel's affidavit identifies him as a "Member" of TEM, clearly indicating a relationship between TEM and GC. See Kiperstin Aff; Ex. 6. TEM's summary judgment papers explicitly spell out that Todd Gurstel is an owner of TEM and the CEO of GC. See Kiperstin Aff; Ex. 7. Likewise, the

ownership of TEM and GC was disclosed to Judge Alton at the summary judgment hearing.  See Kiperstin Aff; Ex. 8. There was full disclosure.

**2.      Sections 1692(d) and 1692(f).**

To the extent that the complaint alleges violations of 1692d and 1692f, Plaintiff's allegations fail to state a claim under 15 U.S.C. § 1692d, which prohibits conduct "the natural consequence of which is to harass, oppress, or abuse" a debtor, or under § 1692f, which forbids debt collectors from using "unfair or unconscionable means" to attempt to collect a debt.  Indeed, it appears Plaintiff does not even try to state such a claim, despite her boilerplate recitation of sections 1692d and 1692f in her causes of action.

"Congress has indicated its desire for the courts to structure the confines of § 1692d."  Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006), quoting Jeter v. Credit Bureau, 760 F. 2d 1168, 1179 (11th Cir. 1985).  If a creditor's alleged acts do not have the "natural consequence of harassing, oppressing, or abusing a debtor," courts will dismiss the claim.  453 F.3d at 330.  Generally, filing of a lawsuit, as Plaintiff has alleged in this case, does not qualify.  As the Court of Appeals for the Sixth Circuit has stated:

> Although nonexhaustive, the examples of oppressive conduct listed in § 1692d concern tactics intended to embarrass, upset, or frighten a debtor.  They are likely to cause the suffering and anguish which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have.  These tactics are not comparable to the single filing of a debt-collection lawsuit.

Id. (internal quotation and citation omitted).  Plaintiff has not alleged any conduct by Defendants towards her other than the filing of the state court lawsuit.  There are

certainly no allegations of physical threats, § 1692d (1), the use of obscene, profane, or abusive language, § 1692d(2), or the type of "shaming" techniques identified in §§ 1692d(3)-(4).  Of course, "[a]ny attempt to collect a defaulted debt will be unwanted by a debtor," 453 F.3d at 330, but § 1692d is not intended to cover the type of garden-variety embarrassment or upset that comes with being subject to a single lawsuit.  Id.

Similarly, section 1692f was enacted to punish those engaging in conduct not otherwise addressed by other sections of the Act.   See Baker v. Allstate Financial Services, Inc., 554 F. Supp. 2d 945, 953 (D. Minn. 2008) (Graham, Mag. J., Rep. & Rec. adopted by Ericksen, J.) ("Baker's claims are all premised on two basic types of alleged conduct: improper disclosures and false threats of legal action.  Multiple specific FDCPA provisions address both these types of conduct.  Section 1692f is, therefore, inapplicable, and the Court recommends that this claim be dismissed."); see also Winberry v. United Collection Bureau, Inc., 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) (noting "a growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA"); Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006).  Here, Plaintiff's claims all sound in deceit, which is well covered by section 1692e.  She has alleged no specific conduct whatsoever to support a 1692f claim.  This failure warrants dismissal of any claim under § 1692f.  Johnson v. BAC Home Loans Servicing, LP, No. 5:10-CV-303-F, 2011 WL 4544013, at *10 (E.D.N.C. Sept. 29, 2011).

3.      **Plaintiff's Claims Are Barred by FDCPA's One-Year Statute of Limitation.**

A cause of action under by the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The violation "occurs" for purposes of the FDCPA statute of limitation when the debt collector takes some action that allegedly violates FDCPA requirements. Freyermuth v. Credit Bureau Svcs., 248 F.3d 767, 770 (8th Cir. 2001), citing Mattson v. U.S. West Comms., Inc., 967 F.2d 259, 261 (8th Cir. 1992).

The FDCPA statute of limitation is jurisdictional. The Court has no jurisdiction to hear any claim that does not fall within the one-year period prior to the date the lawsuit was brought. Mattson, 967 F.2d at 262. Thus, the limitation period may not be equitably tolled. Thompson v. Nat'l Credit Adjusters, LLC, No. 10-2307, 2011 WL 6003955, at *2 (D. Minn. Nov. 30, 2011), citing Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001) (equitable tolling is possible when limitations period is not jurisdictional).

Plaintiff filed her lawsuit in this case on November 17, 2011. This Court has no jurisdiction to consider any claims, therefore, that occurred prior to November 18, 2010. Plaintiff was served with the summons and complaint seeking to recover the delinquent debt on September 24, 2010. See Kiperstin Aff; Ex. 2. Defendants sought a default judgment on October 22, 2010. See Kiperstin Aff; Ex. 3. Each of these events occurred well before November 18, 2010. Accordingly, Plaintiff's FDCPA claim is time-barred.

4.      **Plaintiff Lacks Standing to Bring this Action.**

Plaintiff alleges no facts that she has suffered an injury-in-fact, pecuniary or otherwise, resulting from the alleged conduct of the Defendants. Without evidence of

22

such injury, or even an allegation of same, Plaintiff has not alleged a case or controversy within the meaning of Article III, § 2 of the U.S. Constitution.   See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, (1982); Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976).

Accordingly, Plaintiff lacks standing to proceed with this case.

## C.   Plaintiff Has Failed to State a Claim For Relief Based on Any of Her State Law Theories.

All of Plaintiff's state law claims arise out of the same set of facts as the alleged violation of the FDCPA, and as the federal claims are time barred, the Court has no supplemental jurisdiction to consider the state law claims.   But even viewed independently from the FDCPA, and for the reasons identified below, Plaintiff has failed to state a claim for relief under any of the state law causes of action.

### 1.   Violation of Minnesota Professional Firms Act (Count II).

Plaintiff alleges that by acting as counsel for TEM, GC, together with Todd Gurstel and Mitch Chargo, violated their duty of candor to the court (Complaint, ¶ 46), and violated the Minnesota Professional Firms Act (Complaint, ¶ 69), by failing to disclose that Todd Gurstel and Mitch Chargo are principals of GC and TEM.   The "factual" basis for both assertions is the same unsupported and conclusory charge repeated throughout the Complaint that TEM, the "alter ego" of GC, was created to conceal that GC is the actual owner of the debt and the real party in interest.   As discussed above, Plaintiff has not alleged facts to establish the elements of alter ego. (See discussion *supra* at 18-19.)

23

Moreover, there was no violation of the duty of candor as nothing about the ownership of TEM was concealed.   TEM's summary judgment papers disclose that Todd Gurstel is an owner of TEM and the CEO of GC.  <u>See</u> Kiperstin Aff; Exs. 6-7.  Likewise, the ownership of TEM and GC was disclosed to Judge Alton at the summary judgment hearing.  <u>See</u> Kiperstin Aff; Ex. 8.   The claim that anything was concealed is pure fiction.

Plaintiff cites <u>State ex rel. Oklahoma Bar Association v. Israel</u>, 25 P.3d 909 (2001), a bar disciplinary case from Oklahoma, for the proposition that "a lawyer who is part owner of collection agency must disclose the interest in court pleadings." Complaint ¶ 47.  This is a misstatement of <u>Israel</u>.  In <u>Israel</u>, a lawyer representing a client in a child support action was also part owner of the collection agency that stood to collect a fee if it successfully collected child support payments for that client.  The board of professional responsibility charged Israel with having an interest adverse to his client and not disclosing that interest to his client.   The court ruled that because the parties all shared a common interest, i.e., collection of the support payments, there was no adverse interest, and went on to say that the lawyer had in fact made a proper disclosure to his client.

Contrary to Plaintiff's citation, the court said <u>nothing</u> about an obligation of lawyers to disclose their ownership in a collection agency in court pleadings, or under any other circumstances.  The only similarity between <u>Israel</u> and the present case is that like the lawyer in <u>Israel</u>, Todd Gurstel and GC <u>did</u> properly disclose their ownership interest, both in court pleadings and on the record before Judge Alton.

Finally, there is nothing in Chapter 319B that provides for a private cause of action.  To the contrary, Minn. Stat. §319B.11, Subd. 8, specifically empowers the Board of Professional Responsibility, through the attorney general, to institute proceedings for a violation of the Act.  Count II must be dismissed.

**2.      Violation of Minnesota Prevention of Consumer Fraud Act (Count III) and violation of Minnesota Deceptive Trade Practices Act (Count IV).**

Plaintiff claims that Defendants' efforts to collect on Plaintiff's debts violate the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, and the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44.  The MPCFA prohibits deceptive practices "in connection with the sale of any merchandise."  Minn. Stat. § 325F.69, subd. 1.  The MDTPA prohibits various deceptive trade practices, nearly all of which involve providing misleading information about "goods or services."  See Minn. Stat. § 325D.44, subd. 1(1)-(2), (4)-(10).  It also prohibits "any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  Id.  subd. 1(13).

Although Plaintiff states, without any citation to authority, that these statutes cover debt collection, Complaint ¶ 71, in fact Minnesota courts have explicitly held that neither statute applies to debt collection activities of the type alleged in this case.  Thinesen v. JBC Legal Group, No. 05-518, 2005 WL 2346991, at *5-6 (D. Minn. Sept. 26, 2005) (MDTPA & MPCFA do not apply to collections activity); Maneval v. Jon R. Hawks, Ltd., No. 97-1935, 1999 WL 33911242, at * (D. Minn. Oct. 13, 1999) (debt collection activity does not appear to be covered under MDTPA) (dicta); State ex rel. Hatch v. JBC Legal Group, P.C., No. 62-C9-04006033, 2006 WL 1388453, at *12 (Minn. Dist. Ct.

Apr. 13, 2006) (MDTPA does not apply to collection activities); Id. (MPCFA does not apply to collection activities because such activities are not "in connection with the sale" of merchandise); see also Reno v. Supportkids, Inc., No. 01-2331, 2004 WL 828150, at *4 (D. Minn. Apr. 13, 2004) (Ericksen, J.) (no claim under MPCFA when no connection shown between fraud and sale of goods or services).

Furthermore, even if these statutes were to be applied, Plaintiff's claims still must be dismissed because, as described above, the Complaint contains no factual allegations of deceptive practices by Defendants.  Counts III and IV must be dismissed.

### 3.      Fraudulent and/or negligent misrepresentation (Count V).

Under Federal Rule of Civil Procedure 9(b), the circumstances constituting fraud shall be stated with particularity.  Fed. R. Civ. P. 9(b).  The Rule's particularity requirement "demands a higher degree of notice than that required for other claims." United States ex. rel. Costner v. URS Consultants, Inc. 317 F.3d 883, 888 (8th Cir. 2003). To satisfy this requirement, the complaint "must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  United States ex. rel. Joshi V. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006).  The particularity requirement is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.  United States ex rel. Costner, 317 F.3d at 888.

In Minnesota, to prove a prima facie case of fraud, it must be shown that (1) there was a false representation by a party of a past or existing material fact susceptible of

knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.  Dollar Travel Agency, Inc. Nw. Airlines, Inc., 354 N.W. 2d 880, 883 (Minn.App.1984), *review denied*, (Minn. Dec.21, 1984).

With respect to its fraud claim, Plaintiff broadly alleges that Defendants engaged in fraud "by procuring default judgments against Ness and the class, without proof of ownership of the debt" *** and "deceptive pleadings."  Complaint ¶ 82.  This wholly conclusory allegation fails to set forth the specific contents of the alleged false statements, the times and places at which they were made, the persons to whom they were made, the grounds for the assertion that such statements were false, and does not even identify which defendant is alleged to have made the false statement, let alone any pecuniary damage Plaintiff allegedly suffered.  Plaintiff's allegations fail to satisfy the pleading requirements of Rule 9.  Moreover, just as the FDCPA claim is deficient, so too is Count V.

Similarly, Plaintiff fails to allege any facts to support a claim for negligent misrepresentation.  In fact, Plaintiff's allegations of negligent misrepresentation are identical to her allegations of fraud and are contained in the same paragraph.  Complaint ¶ 82. Negligent misrepresentation occurs "when the misrepresenter has not discovered or communicated certain information that the ordinary person in his or her position would

have discovered or communicated." Florenzano v. Olson, 387 N.W.2d 168, 177 (Minn.1968).

Again, Plaintiff fails to provide the specific facts to identify who represented what to whom, and when, and what information that person should have but failed to discover. Count V must be dismissed.

### 4.    Unjust enrichment (Count VI).

To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value from the claimant for which the defendant "in equity and good conscience" should pay. ServiceMaster of St. Cloud v. GAB Business Services, Inc., 544 N.W.2d 302, 306 (Minn.1996). Unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully. Finally, unjust enrichment requires pleading "a benefit conferred by the plaintiff on the defendant." Interboro Pkg. Corp. v. City of Minneapolis, 2009 WL 2928755, at *8 (Minn. App. 2009).

Here, Plaintiff alleges, essentially, that defendants have enriched themselves through some unstated "deceptive conduct." Complaint ¶ 87. There is no allegation that Plaintiff conferred any benefit to the Defendants. Moreover, the Defendants have not received anything of value from the Plaintiff, they did not collect anything from the Plaintiff, and they have not acted illegally or unlawfully. Count VI must be dismissed.

### 5.    Conspiracy to procure fraudulent judgments (Count VII).

The elements of a civil conspiracy claim are (1) a combination of two or more people (2) to commit an unlawful act or a lawful act by unlawful means.  Harding v.Ohio Cas. Ins. Co., 230 Minn. 327, 337, 41 N.W.2d 818, 824 (1950).   A claim of civil conspiracy must be supported by an underlying tort.  D.A.B. v. Brown, 570 N.W.2d 168, 172 (Minn. App. 1997) (citing Harding, 230 Minn. at 337, 41 N.W.2d at 824).   "[S]ince in so-called civil conspiracy cases liability is predicated upon the tort committed by the conspirators and not upon the conspiracy, allegations of conspiracy do not change the nature of the cause of action.  Harding, 230 Minn. at 338, 41 N.W.2d at 825.  "Accurately speaking, there is no such thing as a civil action for conspiracy."  Id.  (quotation omitted).

The Complaint (¶ 89) does not identify who conspired with whom, when and where the alleged conspiracy was hatched, what unlawful act was to be committed and by what means.   Nor does the Complaint identify what underlying tort was committed. What is clear is that no action taken by any of the Defendants to collect the subject debt violates any law or constitutes the elements of any tort.  Count VII must be dismissed.

### 6.  Malicious prosecution, abuse of legal process, and liability for treble damages (Counts VIII, IX, and X).

Under Minnesota law, to allege a sufficient claim for malicious prosecution, a "[plaintiff] must demonstrate that:  (1) [a legal] action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of [plaintiff]."  Kellar v. VonHoltum, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997).

"Probable cause for pursuing a civil action consists of such facts and circumstances as will warrant a cautious, reasonable and prudent person in the honest belief that his action and the means taken in prosecution of it are just, legal and proper." First Nat'l Bank of Omaha v. Marquette Nat'l Bank, 482 F.Supp. 514, 522-23 (D.Minn.1979), aff'd, 636 F.2d 195 (8th Cir.1980), cert. denied, 450 U.S. 1042 (1981). Only "reasonable belief" that probable cause existed is necessary to negate a malicious prosecution claim. Kellar, 568 N.W.2d at 192.

To succeed on her claim of abuse of process, Plaintiff must adduce evidence that Defendants employed the legal process "to accomplish an unlawful end for which it was not designed or intended, or to compel a party to do a collateral act which he is not legally required to do," Kittler &Hedelson v. Sheehan Props., Inc., 295 Minn. 232, 239, 203 N.W.2d 835, 840 (1973), and that Plaintiffs suffered "an injury to their person or property," as "[m]ere indirect injury to a person's name or reputation is insufficient to constitute abuse of process." Hoppe v. Klapperich, 224 Minn. 224, 232, 28 N.W.2d 780, 787 (1947) (quotation omitted).

Finally, under Minnesota Statutes §§ 481.07 and 481.071, a plaintiff must show that the attorney-defendant engaged in "deceit or collusion…with intent to deceive the court or any party," and "these sections apply only to intentional fraud or deceit." Hemmingsen v. Messerli & Kramer, P.A., 09-CV-1384, 2011 WL 494941 (D.Minn. Feb. 7, 2011).

These same three claims were all rejected by Judge Doty in Hemmingsen, discussed above in addressing Plaintiff's FDCPA claim. After first finding that it is not a

deceptive practice under the FDCPA to continue to press a suit that may prove to be unsuccessful, Judge Doty then dismissed Hemmingsen's assertion that prevailing in the state court action was by itself evidence of malicious prosecution and abuse of process. Judge Doty also rejected Hemmingsen's claim under §481.071, because that section applies only to intentional fraud or deceit, which was not present.

Similarly here, Plaintiff has not alleged facts showing that GC acted with malicious intent or with an ulterior purpose, nor has she alleged facts to establish that GC engaged in intentional fraud or deceit.  GC filed a lawful action to collect on a valid debt, and the case was dismissed without prejudice.  Plaintiff has not even alleged, much less demonstrated, any ulterior motive for Defendants' actions.  Moreover, Plaintiff has not identified how she suffered any damages whatsoever flowing from this "abuse of process."  Finally, as there is no basis to find intentional fraud or deceit, there can be no liability under §481.071.  Counts VIII, IX and X must be dismissed.

**D.**     **Plaintiff's Claims of Personal Liability Against Defendant Gurstel and Defendant Chargo are Specious.**

In scattergun fashion, Plaintiff has sued Defendants Gurstel and Chargo in their individual, personal capacity for every claim brought in this action.  Plaintiff has not one shred of support for suing either lawyer.  Plaintiff does not identify, state or allege a single fact that gives rise to any claim against these Defendants under any of her ten causes of action, nor does she identify, state or allege a single fact to establish any of the factors in Victoria Elevator, *supra*, upon which a basis to pierce the corporate veil might exist.  By lumping the two individual Defendants into the collective "Defendants,"

throughout the Complaint, Plaintiff again, fails to meet the pleading requirements of <u>Iqbal</u> and <u>Twomby</u>.   Accordingly, all claims against the individual Defendants should be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that the Court grant their Motion for Dismissal and dismiss Plaintiff's claims in their entirety.

DATE:  December 13, 2011          PARKER ROSEN, L.L.C.


By ____s/ Andrew D. Parker_____
  Andrew D. Parker  Reg. No. 195042
  Mark J. Kiperstin  Reg. No. 143108
  Daniel N. Lovejoy  Reg. No. 032646X
  300 First Avenue North, Suite 200
  Minneapolis, Minnesota 55401
  Telephone: (612) 767-3000

  ATTORNEYS FOR DEFENDANTS GURSTEL
  CHARGO, P.A., TEM CAPITAL, LLC, TODD
  GURSTEL AND MITCH CHARGO