**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civ. No. 11-3370 (JNE/JSM)**

Carol M. Ness, Jay Xiong,
and Timothy J. Peters,
individually, and on behalf of all others
similarly situated,

                Plaintiffs,

v.

Gurstel Chargo, P.A., TEM Capital, L.L.C.,
Todd Gurstel, Mitch Chargo, and John/Jane
Does 1-20,

                Defendants.

**SECOND
AMENDED CLASS ACTION
COMPLAINT AND JURY
DEMAND**

## INTRODUCTION

1.     Plaintiffs Carol M. Ness, Jay Xiong and Timothy J. Peters bring this

Second Amended Class Action Complaint, individually, and on behalf of all other

similarly situated Minnesota consumers victimized by a predatory scheme by defendants

to deceptively and unlawfully obtain default judgments for consumer debt.

2.     The primary players in this fraudulent scheme are (1) a high-volume

Minnesota debt collection law firm, Gurstel Chargo, P.A. ("Gurstel Chargo"), (2) its

principals, Todd Gurstel ("Gurstel") and Mitch Chargo ("Chargo"), and (3) a debt-buying

company, TEM Capital, L.L.C. ("TEM") (collectively, "defendants").

3.     Defendants obtain default judgments against Plaintiffs in debt collection

actions in state courts in Minnesota and elsewhere.  When obtaining these judgments, Defendants do not disclose that TEM is an alter ego of Gurstel Chargo, a fabricated client incorporated and owned by Gurstel and Chargo of Gurstel Chargo, the true parties in interest.  Defendants' concealed champerty – fabricating a client to predatorily scavenge the financial bones of elderly and poor Minnesota consumers – is against public policy, unethical, and unlawful as a matter of law.

4.      When initiating debt collection actions and pursuing default judgments, Defendants misrepresent that TEM directly purchased consumer debt from the original creditors.  Defendants claim to have personal knowledge that the original creditors assigned the debt to TEM and that TEM owns the debt, yet they are in possession of none of the required documentation to support these claims.

5.      After defendants have obtained default judgments based on insufficient proof, upon information and belief, they proceed to wrongfully restrain bank accounts, garnish wages, threaten to seize personal property, and /or pressure people into unaffordable payment plans.  These fraudulent judgments appear on people's credit reports, preventing them from obtaining housing, employment, insurance, and affordable credit.

6.      Abusive debt collection practices by debt-buyers are a public concern.  The Federal Trade Commission ("FTC") has identified the problem of debt-buyers failing to substantiate their claims against consumers.  FTC, *Collecting Consumer Debts: The Challenges of Change* at 56-57 (2009), available at http://www.ftc.gov/bcp/workshops/

2

debtcollection/dcwr.pdf.  The Minnesota Attorney General addresses the same concern.

*See* http://www.ag.state.mn.us/Consumer/Publications/DebtBuyers.asp.  A New York

foreclosure law firm was recently fined $2 million, to settle a claim that the firm filed

misleading pleadings and affidavits, without documents showing ownership of the

consumer debt with the original creditors.  New York Law Journal, *Upstate Foreclosure*

*Firm Fined $2 Million, Agrees to Overhaul Its Filing Practices* (Oct. 7, 2011).

 7. The abusive debt-buyer in this case, the true party in interest, is a

Minnesota law firm, Gurstel Chargo, and its Minnesota-licensed lawyers, Gurstel and

Chargo.

 8. Ness, Xiong, and Peters, individually and as representatives for the class,

assert claims against the defendants for violations of the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692, *et seq.*, ("FDCPA"); common law champerty;  common law fraud

and/or negligent misrepresentation; unjust enrichment; conspiracy to procure default

judgments through deceit; abuse of legal process; and malicious prosecution of a civil

action.

 9. The class is Ness, Xiong, Peters, and all other similarly situated Minnesota

residents with default judgments entered against them by TEM in Minnesota and other

state district courts.

 10. The default judgments are *void ab initio* because they are procured through

deceit and without documents by defendants showing assignability and valid ownership

of the debt.  Without those documents, Defendants had no standing to sue Ness, Xiong, Peters, and the class.

11.     Plaintiffs seek to end these abhorrent practices.  Ness, Xiong, Peters, and the putative class members are entitled to all available remedies under applicable federal and state statutory authorities and common law including declaratory and injunctive relief, disgorgement, attorneys' fees, and treble damages – treble the amount of the default judgments plus accrued interest – under Minn. Stat. §§ 481.07 and 481.071 for defendants' fraudulent conduct.  Ness, Xiong, Peters, and the class seek damages from defendants, jointly and severally, exceeding $75,000.00.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.  The acts and transactions occurred here, plaintiffs reside here, and defendants transact business here.

## PARTIES

14.     Plaintiff Carol M. Ness resides at 2800 E. 31st St., # 511, Minneapolis, MN 55406.  Ness was granted a name change by a September 22, 2011 order of the Hennepin County District Court changing her legal name from Carol Marylind Elkins to Carol Marylind Ness, her maiden name.

15.     Plaintiff Jay Xiong resides at 330 Minnehaha Avenue West, St. Paul, MN 55103.

16.     Plaintiff Timothy J. Peters resides at 4601 Terracewood Drive, Minneapolis, MN 55437.

17.     Defendant Gurstel Chargo is a Minnesota professional association with its principal place of business at 6681 Country Club Drive, Golden Valley, MN 55427. Gurstel Chargo is regularly engaged in the business of collecting consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits, on behalf of its clients and co-conspirators, including TEM. Gurstel Chargo's principal business is debt collection. It is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

18.     Defendant TEM is a Minnesota limited liability company with its principal place of business at 6681 Country Club Drive, Golden Valley, MN 55427. TEM is regularly engaged in the business of collecting consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits, on behalf of its co-conspirators, including Gurstel Chargo. TEM is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

19.     Defendant Todd Gurstel is an attorney admitted to the Minnesota bar and a shareholder and owner of Gurstel Chargo and TEM. Gurstel regularly collects, directly and indirectly, consumer debts alleged to be due to another via the mail, telephone,

internet, and civil debt collection lawsuits.  Gurstel is a "debt collector" as defined by the

FDCPA, 15 U.S.C. § 1692a(6).

20.    Defendant Mitch Chargo is an attorney admitted to the Minnesota bar and a

shareholder and owner of Gurstel Chargo and TEM.  Chargo regularly collects, directly

and indirectly, consumer debts alleged to be due to another via the mail, telephone,

internet, and civil debt collection lawsuits.  Chargo is a "debt collector" as defined by the

FDCPA, 15 U.S.C. § 1692a(6).

21.    Defendants "John/Jane Does 1-20" are persons and companies associated

with Gurstel Chargo and TEM who were involved in the violations of law alleged in this

Second Amended Class Action Complaint.

22.    On information and belief, TEM is wholly owned and controlled by Gurstel

Chargo shareholders and owners, including Gurstel and Chargo.  On information and

belief, TEM is a mere instrumentality of Gurstel Chargo, and Gurstel and Chargo, and all

of the profits of TEM flow directly to Gurstel Chargo, and Gurstel and Chargo.

## FACTUAL BACKGROUND

### A.    Gurstel's Debt Buying Game

23.    On information and belief, defendant Gurstel authored an article entitled,

"Why Not Get Into the Debt Buying Game," appearing in the November/December 2008

online newsletter of the Commercial Law League of America.  The article, attached as

Exhibit 17 to the Third Affidavit of Douglas J. Nill ("Third Nill Aff."), is available at

http://www.debt3online.com/?page=article&article_id=267.

24.     In the article, Gurstel advises debt collection attorneys "to stop sitting on the sidelines and get into the debt buying game."  Third Nill Aff. Ex. 17, ¶ 1.  Describing the advantages of his business model, Gurstel states that not only did his debt buying company show a profit, but:

> In addition, my law firm generated fees on all of the dollars that were collected to add to my personal profit.  All the while, I did not have a client telling me what my goals were, how to report my data, how to remit, when to remit, how to give statuses, when to give statuses, and lowering my fees.  Most importantly, I do not have to chase myself to get paid for costs expended.  If I want to litigate a case that I own, I litigate it.  If I want to settle a case, I settle it.  I set the fee and away we go.  It is a wonderful and ideal situation.

Third Nill Aff. Ex. 17, ¶ 2.

25.     Advising fledgling attorney debt-buyers, Gurstel writes, "make sure to put together a legal services agreement between your debt buying entity and your law firm. The beauty of this is that you can set the price."  Third Nill Aff. Ex. 17, ¶ 4.  Gurstel adds, "My strategy is to buy state specific in the states that we litigate so I can take full advantage of the leverage available with my law firm."  Third Nill Aff. Ex. 17, ¶ 5.

26.     In the article, Gurstel advises attorneys that "since you will be litigating a majority of your accounts," it is essential to obtain "at a minimum . . . the last statement with the last purchase or payment along with the terms and conditions that accompanied the credit card or a copy of the original debt instrument."  Third Nill Aff. Ex. 17, ¶¶ 7, 8. Gurstel advises, "There are a number of sellers out there who are selling paper they truly

do not own or that has already been sold to others.  It is therefore critical to only do business with people that you know."  Third Nill Aff. Ex. 17, ¶ 6.

### B.      The Ness Debt Collection Litigation

27.      Defendants have procured default judgments against Ness, Xiong, Peters, and 89 similarly situated consumers in Minnesota and other state district courts.  *See* Affidavit of Douglas J. Nill dated February 7, 2012 [Docket No. 23] ("Second Nill Aff.") Ex. 1 (40 default judgments); Third Nill Aff. Ex. 18 (additional 52 default judgments). The defendants against whom these default judgments have been obtained are the putative class.

28.      To collect a debt through litigation, a debt buyer must be able to prove that the creditor's rights under the original credit agreement are assignable, and also that the rights under the agreement were properly assigned to the debt buyer.  The buyer bears the burden of proving the complete chain of valid title linking the original creditor to the buyer's own purchase of the debt.

### 1.      TEM Had No Documents Proving It Owned the Debt

29.      On information and belief, TEM purchased from Absolute Resolution Corporation ("Absolute") a pool of consumer debt originally held by Wells Fargo, N.A. ("Wells Fargo"), that included Ness's charged-off account.

30.      On information and belief, defendants knew at the time of TEM's purchase or shortly thereafter that a portion of the pooled debt TEM had purchased, possibly as much as 50%, was uncollectible as a matter of law because the original Wells Fargo

credit agreements and proper documentation of the chain of title did not exist.

31.     On information and belief, none of the defendants undertook an investigation of the alleged Ness debt prior to filing the complaint to determine whether or not the documents to substantiate the debt could be obtained.  The basis for Plaintiffs' belief is that defendants were unable to produce these documents when asked to do so.

32.     To collect the alleged Ness debt in litigation, TEM was required to prove that Wells Fargo's rights under the original credit agreement between Wells Fargo and Ness were assignable to a third party.

33.     On information and belief, none of the defendants have ever been in possession of the original credit agreement between Wells Fargo and Ness, which document is necessary to prove that Wells Fargo's rights are assignable.  The basis for Plaintiffs' belief is that defendants were unable to produce these documents when asked to do so.

34.     To collect the alleged Ness debt in litigation, TEM was also required to prove the debt was validly assigned from Wells Fargo to Absolute.  To prove assignment TEM offered bills of sale dated April 29, 2010 and May 27, 2010, which are attached as Exhibits 6 and 7 to the Second Nill Affidavit, and set forth in pertinent part below:

BILL OF SALE

Wells Fargo Bank, N.A. ("Seller"), for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby sells, assigns and transfers to Absolute Resolutions Corp. ("Buyer"), all personal property comprising the charged-off Accounts as defined in the Flow Agreement for Purchase and Sale of Charged-Off Accounts dated April 13, 2010, by and between Seller and Buyer, which Accounts are identified on Exhibit A attached hereto.

Seller hereby covenants with Buyer and its successors and assigns that Seller has good and lawful authority to sell and convey the above-described property and that said property is free and clear of all liens and encumbrances whatsoever.

Wells Fargo Bank, N.A., as Seller
By:

Date: April 29, 2010

BILL OF SALE

Wells Fargo Bank, N.A. ("Seller"), for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby sells, assigns and transfers to Absolute Resolutions Corp. ("Buyer"), all personal property comprising the charged-off Accounts as defined in the Flow Agreement for Purchase and Sale of Charged-Off Accounts dated April 13, 2010, by and between Seller and Buyer, which Accounts are identified on Exhibit A attached hereto.

Seller hereby covenants with Buyer and its successors and assigns that Seller has good and lawful authority to sell and convey the above-described property and that said property is free and clear of all liens and encumbrances whatsoever.

Wells Fargo Bank, N.A., as Seller
By:

Date: May 27, 2010

35.    On its face, neither Wells Fargo bill of sale identifies any individual consumer's debt, and therefore neither bill is sufficient proof of assignment and ownership of the alleged Ness debt. Instead, both bills of sale reference additional documents – a "Flow Agreement for Purchase and Sale of Charged-Off Accounts"

10

("Flow Agreement") and an "Exhibit A" – to prove exactly "which Accounts" are sold.

36.     On information and belief, defendants have never possessed and cannot obtain the Flow Agreement and Exhibit A documents needed to prove transfer of the alleged Ness debt from Wells Fargo to Absolute.  The basis for Plaintiffs' belief is that defendants were unable to produce these documents when asked to do so.

37.     TEM was also required to prove the transfer of valid title from Absolute to TEM.  An excerpt from the bill of sale of the alleged Ness debt on June 17, 2010, from Absolute to TEM, is attached as Exhibit 8 to the Second Nill Affidavit, and set forth in pertinent part below:

BILL OF SALE

FOR VALUE RECEIVED, and pursuant to the terms and conditions of the Account Purchase Agreement between **Absolute Resolutions Corp.** ("Seller") and **TEM Capital, LLC.** ("Purchaser"), Seller does hereby sell, assign, and convey to Purchaser, its sucessors and assigns, all right, title and interest of Seller in and to those certain Accounts described in Exhibit "A" (the "Accounts").

This BILL OF SALE is executed without recourse, warranty or representation of any kind, expressed or implied, including, without limitation, any warranty or representation as to the collectability of the Accounts, except as specifically provided in the Account Purchase Agreement.

Executed this 17 day of June, 2010



Absolute Resolutions Corp:

Nancy Hughes

Executive Vice President

38.     On its face, the Absolute bill of sale does not identify any individual consumer's debt, and therefore is not sufficient proof of assignment or ownership. Instead, the bill references other documents – an "Account Purchase Agreement" and an "Exhibit A" – to establish exactly which "certain Accounts" have been sold.

39.     On information and belief, defendants have never possessed and cannot obtain the Account Purchase Agreement and Exhibit A needed to prove transfer of the alleged Ness debt from Absolute to TEM.  The basis for Plaintiffs' belief is that

defendants were unable to produce these documents when asked to do so.

### 2.      Despite its Lack of Proof, TEM sued Ness

40.      On September 24, 2010, without having conducted any investigation into whether they could prove her debt was collectible, Gurstel Chargo served Ness with a summons and complaint on behalf of TEM in a debt collection case captioned *TEM Capital, LLC v. Carol Elkins*, Hennepin County District Court File No. 27-CV-10-25167.

41.      Defendants' complaint against Ness asserted that TEM "is the owner of certain accounts of [the original creditor] including the account of the [consumer]." Defendants did not identify in the Complaint that the alleged debt was sold by Wells Fargo to Absolute, then by Absolute to TEM.  Second Nill Aff., Ex. 9.

42.      On information and belief, defendants at no time had possession of nor were they able to obtain the original Wells Fargo credit agreement, the Flow Agreement or the Exhibit A to the Bills of Sale, all of which were necessary to prove assignment and ownership of the Ness debt.  The basis for Plaintiffs' belief is that defendants were unable to produce these documents when asked to do so.

43.      Upon being served TEM's complaint, Ness consulted with the Hennepin County Volunteer Lawyers Network ("VLN") on October 19, 2010.

44.      An answer was served by a VLN staff attorney on Gurstel Chargo by certified mail on October 20, 2010.  The answer was received by Gurstel Chargo on October 22, 2010.  Second Nill Aff., Ex. 9.

45.      The request for entry of default judgment by a Gurstel Chargo lawyer –

13

through an affidavit of no answer – was submitted to the court by cover letter dated

October 22, 2010.  The Affidavit of No Answer specifically stated that "no answer" was

served by Ness and Ness "has not otherwise defended in the action."  Second Nill Aff.,

Ex. 9.  Despite having received Ness's response, Gurstel Chargo made no effort to

withdraw its motion or advise the court that Ness had answered.

46.     Despite having no documents to prove they owned the alleged Ness debt,

defendants attested to personal knowledge of the Ness debt in affidavits in support of

default.  Second Nill Aff. Ex. 9.

47.     Gurstel Chargo's request for entry of default was granted, and default

judgment was entered against Ness on November 10, 2010.  Second Nill Aff. Ex. 9.

48.     In the intervening several months, November 10, 2010 – February 25,

2011, defendants made no effort to vacate the default judgment.

49.     On February 25, 2011, Ness' counsel, assigned through VLN, filed a

motion to vacate the default judgment.

50.     Ness served discovery requests on Defendants seeking evidence of

ownership of the debt.  Although specifically requested by Ness, Defendants refused to

disclose a copy of the original credit agreement between Wells Fargo and Ness.

Defendants must disclose the agreement, as a matter of law, to prove that the original

creditor's rights are assignable.  Defendants refuse to disclose it, upon information and

belief, because they do not have it.

51.     Although specifically requested by Ness in discovery, Defendants refused

14

to disclose a copy of the Flow Agreement or of the Exhibit A referenced in any of the bills of sale purporting to document the sale of the alleged debt.

52.     Defendants refused to respond to discovery requests for documentation of the indebtedness, and refused to provide the documentation to Ness' counsel and the district court.

53.     Cross motions for summary judgment were heard on September 12, 2011 before the Honorable Ann L. Alton.  A transcript of the summary judgment hearing is attached as Exhibit 2 to the Second Nill Affidavit.

54.     When pushed by Judge Alton to provide documentation of the debt, defendants did not provide the Flow Agreement, the Asset Purchase Agreement, or their respective Exhibits A.  Instead, defendants provided only a computer spreadsheet generated internally by the Gurstel Chargo firm, arguing the spreadsheet proved proper assignment and proper ownership of the debt (emphasis added):

| | |
|---|---|
| [DEFENDANTS' COUNSEL]: | We have submitted a list of accounts now from Absolute to TEM. |
| THE COURT: | You have not submitted any title on here. *I don't know what this is*.  It's a list of accounts and you got her account number correctly numbered but you don't have anything else here.  It's not titled in any way.  It's not the exhibit I was expecting to be attached to the complaint and attached to each of the two transfers, first from Wells Fargo to Resolute and Resolute to you. |

55.     At the hearing, Ness' counsel requested a copy of the spreadsheet, which

defendants refused to provide.  Judge Alton rejected the *ex parte* spreadsheet as a document created by defendants, and not actual documentation of ownership of the debt.

56.     In a September 26, 2011 order, entered September 27, 2011, see Second Nill Aff. Ex. 3, Judge Alton granted summary judgment for Elkins, and dismissing TEM's complaint, stating as a factual finding (emphasis added):

> A collector must prove the assignment of a loan.  [TEM] fails to disclose documents showing an assignment of [Elkins'] loan with Wells Fargo, N.A., to Plaintiff, TEM Capital, LLC.  The Bill of Sale **without the corresponding Schedule A** that describes which accounts were a part of the Bill of Sale is insufficient to prove the assignment of [Elkins'] account.

57.     Defendants litigated debt collection actions against Ness, Xiong, and the proposed class members to default judgment without producing and, on information and belief, without ever possessing, documents proving ownership of the indebtedness between the original creditor and consumers.

58.     Defendants refuse to provide the Flow Agreement because it will disclose, upon information and belief, that the defendants only purchase a pool of debt, and Wells Fargo did not sell documents showing ownership of the individual debt of plaintiffs such as Ness and the class in this case.  On information and belief, the Flow Agreement will reveal that defendants cannot produce documents showing ownership of the underlying consumer debt **for at least 50% of the default judgments** procured by TEM.

59.     Defendants refuse to provide the "Account Purchase Agreement" because, upon information and belief, it will disclose that the defendants only purchase a pool of

debt, and Absolute did not sell documents showing ownership of the individual debt of

plaintiffs such as Ness, Xiong, Peters, and the class in this case, to Gurstel Chargo and its

fabricated client, TEM.  Upon information and belief, the concealed "Account Purchase

Agreement" will reveal that defendants cannot produce documents showing ownership of

the underlying consumer debt *for at least 50% of the default judgments* procured by

TEM.

      60.    Like the Wells Fargo sale to Absolute, defendants refuse to provide the

"Exhibit A" for the Absolute sale to TEM.  The Exhibit A, also sought by Judge Alton in

the Hennepin County litigation against Carol Elkins (Ness) by TEM/Gurstel Chargo is

the very document that purports to identify the exhibits that were sold by Absolute to

TEM.  Without this document, TEM could not prove it owned the debt.

      61.    Minn. R. Civ. P. 55.01(e) requires:

> When judgment is entered in an action upon a promissory note, draft or bill of exchange under the provisions of this rule, such promissory note, draft or bill of exchange shall be filed with the court administrator and made a part of the files of the action.

      62.    Defendants procured a default judgment against Ness without filing

documents with the complaint or affidavit in support of default judgment, proving an

assignment and ownership of the debt.  Although the statute does not expressly require

such a filing in an action seeking collection of consumer debt, and to date no Minnesota

court has yet required such a filing, in Plaintiff's view, a good faith reading of Minnesota

Rule of Civil Procedure 55.01(e) required Defendants to attach the documents proving

assignment and ownership of the debt.

63.     Counsel have an obligation of candor toward the court.  Minn. R. Prof. Conduct 3.3.  Defendants Gurstel Chargo, a Minnesota law firm, and its Minnesota-licensed lawyers, Todd Gurstel and Mitch Chargo, violate candor by procuring default judgments against Ness and the class, without proof of ownership of the debt or a legal right to collect the debt, while attesting to personal knowledge of the debt in affidavits in support of default, through an alter ego, TEM, a fictitious client, concealing that Gurstel Chargo, and Gurstel and Chargo, are the true parties in interest.

64.     TEM's complaints against Ness, Xiong, and Peters did not disclose that TEM was wholly owned by Gurstel and Chargo, the principals of the law firm bringing the suit.  *See* Second Nill Aff. Ex. 9.

65.     Said Judge Alton, addressing Gurstel Chargo's non-disclosure that TEM is a corporation created by Gurstel and Chargo (emphasis added):

> THE COURT:      It should be disclosed; I acknowledge that.  Your own company is the party in interest, which it is, and if it has the same ownership ***it is clearly an alter ego***.

66.     Defendants' representations were false, or omitted information necessary to avoid misleading Ness and the putative class members and the Minnesota courts.

67.     Ness, Xiong, Peters, the class members and the Minnesota courts were deceived by defendants' deceptive representations and omissions.

68.     As a direct and proximate result of defendants' deceptive representations

18

and omissions, Ness, Xiong, Peters, and the class members were harmed through the entry of *void ab initio* default judgments and collection activities predicated on those judgments.

### C. The Xiong Debt Collection Litigation

#### 1. TEM Had No Documents Proving It Owned the Debt

69. On information and belief, TEM purchased from Absolute a pool of consumer debt originally held by Wells Fargo that included Xiong's charged-off account.

70. On information and belief, defendants knew at the time of TEM's purchase or shortly thereafter that a portion of the pooled debt TEM had purchased, possibly as much as 50%, was uncollectible as a matter of law because the original Wells Fargo credit agreements and proper documentation of the chain of title did not exist.

71. On information and belief, none of the defendants undertook an investigation of the Xiong debt prior to filing the complaint to determine whether or not the documents to substantiate the debt could be obtained.

72. To collect the alleged Xiong debt in litigation, TEM was required to prove that Wells Fargo's rights under the original credit agreement between Wells Fargo and Xiong were assignable to a third party.

73. On information and belief, none of the defendants have ever been in possession of the original credit agreement between Wells Fargo and Xiong, which document is necessary to prove that Wells Fargo's rights are assignable.

74. To collect the alleged Xiong debt in litigation, TEM was also required to

prove the debt was validly assigned from Wells Fargo to Absolute.

75.     On information and belief, defendants have never possessed and cannot obtain the Flow Agreement and Exhibit A documents needed to prove transfer of the alleged Xiong debt from Wells Fargo to Absolute.

76.     TEM was also required to prove the transfer of valid title from Absolute to TEM.

77.     On information and belief, defendants have never possessed and cannot obtain the Account Purchase Agreement and Exhibit A needed to prove transfer of the alleged Xiong debt from Absolute to TEM.

### 2.     Despite its Lack of Proof, TEM sued Xiong

78.     On June 14, 2011, without having conducted any investigation into whether they could prove his debt was collectible, Gurstel Chargo served Xiong with a summons and complaint on behalf of TEM in a debt collection case captioned *TEM Capital, LLC v. Jay Xiong*, Ramsey County District Court File No. 62-CV-11-7151, attached as Exhibit 13 to the Second Nill Affidavit.

79.     Defendants' complaint against Xiong asserted that TEM "is the owner of certain accounts of [the original creditor] including the account of the [consumer]." Defendants did not identify in the Complaint that the alleged debt was sold by Wells Fargo to Absolute, then by Absolute to TEM.  Second Nill Aff. Ex. 13.

80.     On information and belief, defendants at no time had possession of nor were they able to obtain the original Wells Fargo credit agreement, the Flow Agreement

or the Exhibit A to the Bills of Sale, all of which were necessary to prove assignment and ownership of the Xiong debt.

81.     Xiong did not answer TEM's Complaint.

82.     Defendants moved for a default judgment against Xiong.  Despite having no documents to prove they owned the alleged Xiong debt, defendants attested to personal knowledge of the Xiong debt in affidavits in support of default.  *See* Second Nill Aff. Ex. 13.

83.     Minn. R. Civ. P. 55.01(e) requires:

> When judgment is entered in an action upon a promissory note, draft or bill of exchange under the provisions of this rule, such promissory note, draft or bill of exchange shall be filed with the court administrator and made a part of the files of the action.

84.     Defendants procured a default judgment against Xiong without filing documents with the complaint or affidavit in support of default judgment, proving an assignment and ownership of the debt.  Although the statute does not expressly require such a filing in an action seeking collection of consumer debt, and to date no Minnesota court has yet required such a filing, in Plaintiff's view, a good faith reading of Minnesota Rule of Civil Procedure 55.01(e) required Defendants to attach the documents proving assignment and ownership of the debt.

85.     Gurstel Chargo's request for entry of default was granted, and default judgment in the amount of $3,028.82 was entered against Xiong on September 2, 2011. *See* Second Nill Aff. Ex. 13.

86.     Xiong is currently paying the judgment.

**D.     The Peters Debt Collection Litigation**

      **1.     TEM Had No Documents Proving It Owned the Debt**

87.     On information and belief, TEM purchased from Absolute a pool of consumer debt originally held by U.S. Bank N.A. ("U.S. Bank") that included Timothy J. Peters's charged-off account.

88.     On information and belief, defendants knew at the time of TEM's purchase or shortly thereafter that a portion of the pooled debt TEM had purchased, possibly as much as 50%, was uncollectible as a matter of law because the original U.S. Bank credit agreements and proper documentation of the chain of title did not exist.

89.     On information and belief, none of the defendants undertook an investigation of the Peters debt prior to filing the complaint to determine whether or not the documents to substantiate the debt could be obtained.

90.     To collect the alleged Peters debt in litigation, TEM was required to prove that U.S. Bank's rights under the original credit agreement between U.S. Bank and Peters were assignable to a third party.

91.     On information and belief, none of the defendants have ever been in possession of the original credit agreement between U.S. Bank and Peters, which document is necessary to prove that U.S. Bank's rights are assignable.

92.     To collect the alleged Peters debt in litigation, TEM was also required to prove the debt was validly assigned from U.S. Bank to Absolute.

93.     On information and belief, defendants have never possessed and cannot obtain the Flow Agreement and Exhibit A documents needed to prove transfer of the alleged Peters debt from U.S. Bank to Absolute.

94.     TEM was also required to prove the transfer of valid title from Absolute to TEM.

95.     On information and belief, defendants have never possessed and cannot obtain the Account Purchase Agreement and Exhibit A needed to prove transfer of the alleged Peters debt from Absolute to TEM.

### 2.     Despite its Lack of Proof, TEM sued Peters

96.     On October 12, 2011, without having conducted any investigation into whether they could prove his debt was collectible, Gurstel Chargo served Peters with a summons and complaint on behalf of TEM in a debt collection case captioned *TEM Capital, LLC v. Timothy J. Peters*, Hennepin County District Court File No. 27-CV-11-22976, attached as Exhibit 20 to the Third Nill Affidavit.

97.     Defendants' complaint against Peters asserted that TEM "is the owner of certain accounts of [the original creditor] including the account of the [consumer]." Defendants did not identify in the Complaint that the alleged debt was sold by U.S. Bank to Absolute, then by Absolute to TEM.  Third Nill Aff. Ex. 20.

98.     On information and belief, defendants at no time had possession of nor were they able to obtain the original U.S. Bank credit agreement, the Flow Agreement or the Exhibit A to the Bills of Sale, all of which were necessary to prove assignment and

ownership of the Peters debt.

99.    Peters did not answer TEM's Complaint.

100.    Defendants moved for a default judgment against Peters.  Despite having no documents to prove they owned the alleged Peters debt, defendants attested to personal knowledge of the Peters debt in affidavits in support of default.  *See* Third Nill Aff. Ex. 20.

101.    Minn. R. Civ. P. 55.01(e) requires:

> When judgment is entered in an action upon a promissory note, draft or bill of exchange under the provisions of this rule, such promissory note, draft or bill of exchange shall be filed with the court administrator and made a part of the files of the action.

102.    Defendants procured a default judgment against Xiong without filing documents with the complaint or affidavit in support of default judgment, proving an assignment and ownership of the debt.  Although the statute does not expressly require such a filing in an action seeking collection of consumer debt, and to date no Minnesota court has yet required such a filing, in Plaintiff's view, a good faith reading of Minnesota Rule of Civil Procedure 55.01(e) required Defendants to attach the documents proving assignment and ownership of the debt.

103.    Gurstel Chargo's request for entry of default was granted, and default judgment in the amount of $33,776.00 was entered against Peters on November 18, 2011.  *See* Third Nill Aff. Ex. 20.

104.    Peters is currently paying the judgment.

### E.      Class Action Allegations

105.    Plaintiffs bring this case as a class action under three distinct subdivisions of Fed. R. Civ. P. 23(b).

106.    First, plaintiffs seek certification of  a Rule 23(b)(1)(A) and/or 23(b)(2) class consisting of all persons who have been or will be sued by TEM and Gurstel Chargo as counsel for TEM in actions commenced in Minnesota and other state district courts and where a default judgment has been or will be sought.

107.    The prosecution of separate actions by individual members of the proposed Rule (b)(1)(A) and (b)(2) class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendants.

108.    Defendants have acted, or failed to act, on grounds generally applicable to the Rule (b)(1)(A) and (b)(2) class, thereby making appropriate final injunctive relief with respect to the class as a whole.

109.    On information and belief, the Rule (b)(1)(A) and (b)(2) class includes dozens of members.  Joining all class members as individual plaintiffs is impracticable.

110.    Second, plaintiffs seek certification of a Rule 23(b)(3) class consisting of all persons sued by TEM and Gurstel Chargo as counsel for TEM in actions commenced in Minnesota and other state district courts and where a default judgment has been entered against them.

111.    All of the members of the Rule 23(b)(3) class were injured as a result of the defendants' conduct.

112.    On information and belief, the Rule 23(b)(3) class includes dozens of members.  Joining all class members as individual plaintiffs is impracticable.  There are numerous questions of law and fact common to the class.  Chief among them are whether defendants' actions, as described above, violate the FDCPA, champerty,  common law fraud and/or negligent misrepresentation, violations of candor, Minn. R. Prof. Conduct 3.3, unjust enrichment, conspiracy to procure default judgments through deceit, abuse of legal process, and malicious prosecution of a civil action.

113.    Defendants' conduct towards Ness, Xiong, Peters, and all absent class members of the proposed classes has resulted in fraudulently obtained judgments of default being entered, which has, in turn, caused serious harm.  The claims and practices alleged in this complaint are common to all members of the class.

114.    The violations suffered by Ness, Xiong, and Peters are typical of those suffered by the class.  The entire class will benefit from the remedial and monetary relief sought in this action.  The application of remedies such as treble damages under Minn. Stat. §§ 481.07 and 481.071– treble the amount of the default judgments plus accrued interest – are common to the class.

115.    Ness, Xiong, and Peters have no conflict of interest with any putative absent class members, and will fairly and adequately protect the interests of the class. Counsel for the class is competent and experienced in federal and state class actions and unfair debt collection practice litigation.  *See* www.FarmLaw.com (honored as a top 15 attorney in Minnesota in 2006 for role as the lead counsel for plaintiffs in *Peterson v.*

26

*BASF Corp.*, a 13-year national consumer fraud class action litigated to a $62 million judgment).

116.    This action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all members of the class is impracticable, and the damages suffered, although substantial, are small in relation to the extraordinary expense and burden of individual litigation and therefore it is highly unlikely that individual actions will be pursued.

117.    Managing this case as a class action should not present any particular difficulty.

### COUNT I
### Violations Of The Fair Debt Collection Practices Act,
### 15 U.S.C. § 1692 *et seq.*

118.    Plaintiffs reassert and incorporate paragraphs 1-117.

119.    The FDCPA, 15 U.S.C. § 1692 *et seq.***,** forbids "debt collectors" from, *inter alia*:  (1) engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person, 15 U.S.C. § 169d, (2) making a "false, deceptive, or misleading representation," 15 U.S.C. § 1692e, or (3) using "unfair or unconscionable means" to attempt to collect a debt, 15 U.S.C. § 1692(f).  Section 1692e specifically prohibits false representation of "the character, amount, or legal status of any debt" and the use of deceptive means "to collect or attempt to collect any debt."  15 U.S.C. § 1692(e)(2)(A), (10).

120.    Defendants violate the FDCPA by procuring default judgments against

Ness, Xiong, Peters, and the class, without proof of ownership of the debt or a legal right to collect the debt, and deceptive pleadings, through TEM, an alter ego of Gurstel Chargo, a fabricated client, concealing that Gurstel Chargo, and Gurstel and Chargo, are the true parties in interest.  Defendants' violations include, but are not limited to:

- Failing to disclose that TEM is an alter ego, a fabricated client incorporated and owned by Gurstel and Chargo of Gurstel Chargo;

- Misrepresenting that TEM directly purchased debt from the original creditor;

- Misrepresenting that the defendants are in possession of or could obtain documentation evidencing that Ness and the class members owe a debt, when in fact they do not possess and cannot obtain such documentation;

- Using fraudulent, deceptive and misleading affidavits and affirmations to obtain default judgments against Ness and the class members under false pretenses;
- Failing to attached required documents to the complaint or affidavits, proving the existence and/or ownership of the debt; and

- Using fraudulently obtained default judgments to extract money from the class members.

121.    As a direct and proximate result of the defendants' conduct, the plaintiffs have sustained actual damages in an amount to be proved at trial and are also entitled to statutory damages, costs and attorneys' fees.

## COUNT II
## Champerty

122.    Plaintiffs reassert and incorporate paragraphs 1-121.

123.    TEM is an alter ego, a fabricated client incorporated and owned by Gurstel and Chargo of Gurstel Chargo, the true parties in interest.

28

124.    Defendants' champerty – fabricating a client to predatorily scavenge the financial bones of the elderly and poor – is against public policy, unethical, and unlawful as a matter of law.  *Gammons v. Honerud*, 84 N.W. 911 (Minn. 1901) (champerty is intended to prevent the purchase of claims to speculate in litigation); *Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 198 (N.Y. 2009) (champerty is intended to prevent law firms or corporations from purchasing claims for the purpose of bringing litigation); *Spine Imaging MRI, L.L.C. v. Liberty Mut. Ins. Co.*, Civ. No. 09-1963 (JRT/AJB) (D. Minn. 2011) (citing *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 220) (Ohio) (champerty is a viable common law doctrine to prevent lawyers from speculating in litigation); Minn. R. Prof. Conduct 1.8(i) (lawyer shall not acquire a proprietary interest in a cause of action; rule has its basis in common law champerty).

125.    As a direct and proximate result of the defendants' officious intermeddling and speculation in litigation, plaintiffs Ness, Xiong, Peters, and the class were harmed by the litigation wrongfully stirred up against them and the default judgments entered against them, and have sustained actual damages in an amount to be proved at trial.

## COUNT III
## Fraud And/Or Negligent Misrepresentation

126.    Plaintiffs reassert and incorporate paragraphs 1-125.

127.    Defendants engaged in fraudulent and/or negligent misrepresentations by procuring default judgments against Ness, Xiong, Peters, and the class, without proof of

assignability or ownership of the debt, and deceptive pleadings, through TEM, an alter

ego of Gurstel Chargo, a fabricated client, concealing that Gurstel Chargo, and Gurstel

and Chargo, are the true parties in interest.

128.   Defendants' representations were false, or omitted information necessary to

avoid misleading Ness, Xiong, Peters, the class members and the Minnesota courts.

129.   Ness, Xiong, Peters,  the class members and the Minnesota courts were

deceived by defendants' deceptive representations and omissions and relied on those

deceptive representations and omissions.

130.   As a direct and proximate result of defendants' deceptive representations

and omissions, Ness, Xiong, Peters, and the class members were harmed through the

entry of *void ab initio* default judgments and collection activities predicated on those

judgments.

## COUNT IV
## Unjust Enrichment

131.   Plaintiffs reassert and incorporate paragraphs 1-130.

132.   Through defendants' deceptive conduct, defendants have been unjustly

enriched under the common law of Minnesota through their collection activities

predicated on the deceptive and unlawful default judgments procured against Ness,

Xiong, Peters, and the class members.

## COUNT V
## Conspiracy To Procure Fraudulent Judgments

133.   Plaintiffs reassert and incorporate paragraphs 1-132.

134.     Defendants conspired to procure fraudulent judgments by procuring default judgments against Ness, Xiong, Peters, and the class, without proof of assignability or ownership of the debt, through TEM, an alter ego of Gurstel Chargo, a fabricated client, and deceptive pleadings, concealing that Gurstel Chargo, and Gurstel and Chargo, are the true parties in interest.

## COUNT VI
## Abuse Of Legal Process

135.     Plaintiffs reassert and incorporate paragraphs 1-134.

136.     Without documents showing assignability and valid ownership of the debt and standing to sue Ness, Xiong, Peters, and the class, and deceptive pleadings, defendants' litigation against Ness, Xiong, Peters, and the class is an abuse of legal process.

137.     Defendants' default judgments against Ness, Xiong, Peters, and the class were procured through an illegal, improper, perverted use of process, a use neither warranted or authorized by law.

138.     Defendants had an ulterior motive or purpose, causing damage to Ness, Xiong, Peters, and the class.

## COUNT VII
## Malicious Prosecution Of A Civil Action

139.     Plaintiffs reassert and incorporate paragraphs 1-138.

140.     Without documents showing assignability and valid ownership of the debt and standing to sue Ness, Xiong, Peters, and the class, and deceptive pleadings,

31

defendants' default judgments procured against Ness, Xiong, Peters, and the class are malicious prosecution of a civil action.

## COUNT VIII
### Liability For Treble Damages,
### Minn. Stat. §§ 481.07 and 481.071

141.    Plaintiffs reassert and incorporate paragraphs 1-140.

142.    Defendants Gurstel Chargo, and Todd Gurstel and Mitch Chargo, jointly and severally, are liable for treble the amount of the default judgments entered against Ness, Xiong, Peters, and the class (including accrued interest on the judgments), as a result of the deceptive and unlawful conduct perpetrated against plaintiffs and the Minnesota state district courts.  Minn. Stat. §§ 481.07 and 481.071 (Minnesota attorneys who deceive a party or court are liable for treble the amount of the fraud); *Amalfitano v. Rosenberg*, 12 N.Y.3d 8 (N.Y. 2009) (treble damage statute applies to all attempted deceit by lawyers upon a party or court, even unsuccessful deceit).

## TRIAL BY JURY

143.    Pursuant to Fed. R. Civ. P. 38 and the Constitution of the United States, plaintiffs demand a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Carol M. Ness, Jay Xiong, and Timothy J. Peters, individually, and on behalf of a class of persons similarly situated, Minnesota consumers victimized by a predatory scheme by defendants to deceptively and unlawfully obtain default judgments, respectfully asks this Court to grant plaintiffs the following relief:

1.      An order certifying this case as a class action under Fed. R. Civ. P. 23;

2.      A judgment declaring that defendants have committed the violations of law alleged in this action;

3.      An order granting declaratory and injunctive relief under the FDCPA, an award of statutory damages of $1,000.00 for Ness, Xiong, Peters, and each member of the class, 15 U.S. C. § 1692k(a)(2)(A), and an award of actual damages, reasonable costs and attorneys' fees, 15 U.S. C. § 1692k(a)(1) and (3);

4.      Actual and compensatory damages against all defendants in an amount to be proven at trial;

5.      Treble damages pursuant to Minn. Stat. §§ 481.07 and 481.071;

6.      An order directing defendants to take all remedial steps to vacate the default judgments against the class, as the default judgments are *void ab initio*, Minn. R. Civ. P. 60.02 (d), and were procured through a fraud upon the class and the respective courts, Minn. R. Civ. P. 60.02 (c), and in the interests of justice, Minn. R. Civ. P. 60.02(f).

7.      Disbursements, costs, and attorneys' fees pursuant to the FDCPA and other cited authorities;

8.      Interest to the extent it is allowed by law; and

9.      Such other and further relief as the Court deems just and equitable.

                                    Respectfully submitted,

Dated:  November 20, 2012          **DOUGLAS J. NILL, LLC**

s/ Douglas J. Nill
Douglas J. Nill (# 0194876)
1100 Canadian Pacific Plaza
120 South Sixth Street
Minneapolis, MN  55402-1801
Phone:  (612) 573-3669
Fax:      (612) 330-0959
dnill@farmlaw.com

Attorney for Plaintiffs