UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carol M. Ness, Jay Xiong,
and Timothy J. Peters,
individually, and on behalf of all others
similarly situated,

       Plaintiffs,

v.                                                              Civil No. 11-3370 (JNE/JSM)
                                                                ORDER
Gurstel Chargo, P.A.; TEM Capital,
L.L.C.; Todd Gurstel; Mitch Chargo;
and John/Jane Does 1–20,

       Defendants.

     Plaintiffs Carol M. Ness, Jay Xiong, and Timothy J. Peters bring this action on behalf of

themselves and a putative class against Defendants Gurstel Chargo, P.A. ("Gurstel Chargo");

TEM Capital, L.L.C. ("TEM"); Todd Gurstel ("Gurstel"); Mitch Chargo ("Chargo"); and

John/Jane Does 1–20 alleging violations of the Fair Debt Collection Practices Act ("FDCPA")

and of Minnesota state law. This case is before the Court on Defendants' motion to dismiss

Plaintiffs' Second Amended Complaint.[1] For the reasons set forth below, the Court grants

Defendants' motion.

## I.      BACKGROUND

     TEM is a business that collects consumer debts. Gurstel Chargo is a law firm that

represented TEM in the state-court debt-collection actions at issue in this case. Gurstel and

Chargo are attorneys who are shareholders of Gurstel Chargo and owners of TEM.

     TEM purchased a pool of consumer debt from Absolute Resolution Corporation

("Absolute"). That pool of debt was originally held by Wells Fargo, and it included Ness's debt.

---

[1]     Defendants also have pending before this Court a motion for sanctions against Plaintiffs'
counsel. The Court will address that motion in a separate order.

The bills of sale between Wells Fargo and Absolute stated that the pool of consumer debt was "charged-off Accounts as defined in the Flow Agreement . . . which Accounts are identified on Exhibit A attached hereto." (Second Am. Compl. ("SAC") ¶ 34.) The bill of sale between Absolute and TEM conveyed to TEM "certain Accounts described in Exhibit 'A.'" (*Id.* ¶ 37.)

On September 24, 2010, TEM filed a lawsuit against Ness in Minnesota state court to collect the debt. On October 22, 2010, TEM requested entry of default judgment against Ness and filed an Affidavit of No Answer. That same day, Gurstel Chargo received Ness's answer. The request for default judgment was granted, and default judgment was entered against Ness on November 10, 2010. Ness filed a motion to vacate the default judgment on February 25, 2011, and that motion was granted. During discovery, Ness requested that TEM produce a copy of her original credit agreement with Wells Fargo, the Flow Agreement, and Exhibit A. TEM did not produce those documents to Ness. The parties moved for summary judgment. TEM provided the state court with the bills of sale between Wells Fargo and Absolute and between Absolute and TEM. At the hearing in September 2011, counsel for TEM produced a document for the state court that purportedly was the Exhibit A referenced in the bills of sale. The state court declined to receive the document on grounds that it was not adequately authenticated. The state court held that without Exhibit A, TEM could not show that Ness's debt was sold to TEM and granted summary judgment in favor of Ness without prejudice.

TEM also purchased from Absolute the debts of Xiong and Peters, whose debts were originally held by Wells Fargo and US Bank, respectively. In 2011, TEM commenced debt-collection actions in state court against Xiong and Peters. Xiong and Peters did not answer the complaints, and TEM moved for default judgment in both cases. Default judgments were entered against Xiong and Peters, and they are paying the judgments.

Ness, on behalf of herself and all those similarly situated, filed a Class Action Complaint in federal district court on November 17, 2011. She filed an Amended Complaint and then moved for leave to file a Second Amended Complaint. Leave was granted, and Ness, Xiong, and Peters, on behalf of themselves and all others similarly situated, filed the Second Amended Complaint. In the Second Amended Complaint, Plaintiffs bring the following claims against Defendants: (1) violations of the FDCPA, (2) champerty, (3) fraud and/or negligent misrepresentation, (4) unjust enrichment, (5) conspiracy to procure fraudulent judgments, (6) abuse of legal process, (7) malicious prosecution of a civil action, and (8) liability for treble damages under Minn. Stat. §§ 481.07, .071. In the request for relief, Plaintiffs ask for an order granting declaratory and injunctive relief under the FDCPA; statutory damages under the FDCPA; actual and compensatory damages; treble damages under Minn. Stat. §§ 481.07, .071; and "[a]n order directing defendants to take all remedial steps to vacate the default judgments against the class, as the default judgments are *void ab initio*, . . . and were procured through a fraud upon the class and the respective courts." (*Id.* at 33, ¶ 6.) Defendants moved to dismiss the Second Amended Complaint.

## II.    ANALYSIS

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011). Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## A. *Rooker-Feldman*

Before turning to the individual counts in the Second Amended Complaint, the Court will address Defendants' argument that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction over an action where a losing party in state court files a suit in federal district court after the conclusion of state proceedings, complains of injuries caused by the state-court judgment, and seeks review and rejection of that judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005). But the doctrine does not bar federal district courts from considering claims "attacking an adverse party's actions in obtaining and enforcing that [state-court] decision." *MSK EyEs Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533, 539 (8th Cir. 2008).

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008) (quotation omitted).

Consequently, *Rooker-Feldman* does not bar an FDCPA claim challenging only a defendant's debt-collection practices, without challenging the validity of the state-court judgment. *See Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (concluding that *Rooker-Feldman* did not bar plaintiff's claim that defendant violated the FDCPA by filing a false affidavit in state court); *Naranjo v. Universal Sur. of Am.*, 679 F. Supp.

2d 787, 795 (S.D. Tex. 2010) (concluding that *Rooker-Feldman* did not bar suit alleging defendants violated the FDCPA by bringing time-barred collection actions in state court); *Druther v. Hamilton*, No. C09-5503, 2009 WL 4667376, at *3–4 (W.D. Wash. Dec. 3, 2009) (concluding that *Rooker-Feldman* did not bar suit alleging that defendants violated the FDCPA by failing to properly serve plaintiff in state court); *Jenkins v. Gen. Collection Co.*, 538 F. Supp. 2d 1165, 1171–72 (D. Neb. 2008) (concluding that *Rooker-Feldman* did not bar suit alleging that defendants violated the FDCPA by bringing time-barred collection actions and misrepresenting the nature and character of the debt in state court). In the Second Amended Complaint, Plaintiffs allege that Defendants violated the FDCPA by procuring default judgments against Plaintiffs "without proof of ownership of the debt," without "a legal right to collect the debt," and with deceptive pleadings. (SAC ¶ 120.) These allegations appear to attack Defendants' debt-collection practices rather than the state-court judgments, so for the purposes of deciding this motion, the Court determines that *Rooker-Feldman* does not bar these FDCPA claims.

However, the Second Amended Complaint does contain two claims in which Plaintiffs complain of injuries caused by the state-court judgments themselves and seek indirect reversal of those judgments; those claims are barred by *Rooker-Feldman*. The first is Plaintiffs' claim of fraud and/or negligent misrepresentation in Count III of the Second Amended Complaint. In that count, Plaintiffs allege that as a result of Defendants' "deceptive representations and omissions," they "were harmed through the entry of *void ab initio* default judgments and collection activities predicated on those judgments." (*Id.* ¶ 130.) In the request for relief, Plaintiffs ask this Court to issue an order directing Defendants to "take all remedial steps to vacate the default judgments against the class, as the default judgments are *void ab initio* . . . and were procured through a fraud." (*Id.* at 33, ¶ 6.) Plaintiffs' complained-of injuries are the state-court default judgments.

To the extent Plaintiffs seek to avoid *Rooker-Feldman* by asking this Court to order Defendants themselves to take steps to vacate the state-court judgments, the Court rejects that subterfuge. That tactic has already been tried and rejected in this circuit. *See Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035 (8th Cir. 1999) (noting that *Rooker-Feldman* bars a claim even if the federal district court orders a party, rather than the state court, to do something that would effectively reverse the state court judgment). Plaintiffs' fraud claim is barred by *Rooker-Feldman*. *See Moon v. Chicot Cnty. Ark. Legal Assocs.*, 170 Fed. App'x 988, 989 (8th Cir. 2006) (mentioning that plaintiff's fraud claim was barred by *Rooker-Feldman*); *Fielder*, 188 F.3d at 1035–36 (noting that generally there is no fraud exception to *Rooker-Feldman*).

*Rooker-Feldman* also bars Plaintiffs' unjust enrichment claim in Count IV of the Second Amended Complaint. In that claim, Plaintiffs allege, "Through defendants' deceptive conduct, defendants have been unjustly enriched under the common law of Minnesota through their collection activities predicated on the deceptive and unlawful default judgments procured against [Plaintiffs]." (SAC ¶ 132.)[2] Plaintiffs do not allege that Defendants have been unjustly enriched because of spurious or improper collection activities; rather, Plaintiffs assert that Defendants have been unjustly enriched because Defendants have collected Plaintiffs' debts pursuant to the state-court default judgments. The state-court default judgments are the source of Plaintiffs' injuries, and Plaintiffs are again seeking an indirect reversal of the state-court judgments by asking for the return of money paid to Defendants pursuant to these judgments. *See generally Fielder*, 188 F.3d at 1035. Therefore, Plaintiffs' unjust enrichment claim is barred by *Rooker-Feldman*. *See Bernegger v. Wash. Mut., F.A.*, Nos. 07-C-1028, 08-C-0335, 2008 WL 4722392, at

---

[2]     Ness fails, in any event, to state a claim for unjust enrichment. For a claim of unjust enrichment, one party must give another party a benefit. *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012). The Second Amended Complaint does not allege that Ness conferred any benefit on Defendants.

*8 (E.D. Wis. Oct. 24, 2008) (concluding that *Rooker-Feldman* barred claim that defendants were unjustly enriched by state-court attorney-fee awards because the claim was "tantamount to a request to vacate the state court's judgment"); *Kelley v. Med-1 Solutions, LLC*, No. 1:07-CV-1245, 2008 WL 345986, at *4 (S.D. Ind. Feb. 6, 2008) (concluding that *Rooker-Feldman* divested court from considering claim that defendants were unjustly enriched from a state-court monetary judgment that included attorney's fees when plaintiffs sought as damages all attorney's fees plaintiffs paid to defendants).

The Court now turns to the claims over which its jurisdiction is not foreclosed by *Rooker-Feldman*.

### B. FDCPA (Count I)

Plaintiffs allege in Count I of the Second Amended Complaint that Defendants violated the FDCPA by filing and pursuing state-court collection lawsuits. The 34-page complaint sets forth a litany of accusations against Defendants, some of which are extraneous and argumentative. Paragraphs 23 to 26, for example, describe an article written by Gurstel and published in the online newsletter of the Commercial Law League of America. Yet more paragraphs are devoted to descriptions of a state-court judge's statements at a summary-judgment hearing. It is difficult to discern exactly what conduct Plaintiffs are claiming violates which sections of the FDCPA.

In Count I, Plaintiffs first cite three sections of the FDCPA: § 1692d, § 1692e, and § 1692f. In the next paragraph they assert—without pairing any factual allegation to a provision of the act—that Defendants violated the FDCPA. The paragraph contains six bullet points that illustrate the claim that Defendants violated the FDCPA by "procuring default judgments against Ness, Xiong, Peters, and the class, without proof of ownership of the debt or a legal right to

collect the debt, and deceptive pleadings, through TEM, an alter ego of Gurstel Chargo, a

fabricated client, concealing that Gurstel Chargo, and Gurstel and Chargo, are the true parties in

interest." (SAC ¶ 120.) The Court discerns from this paragraph that Plaintiffs assert two or three

separate FDCPA violations, both (or all, if that is what intended) of which relate to the procuring

of state-court default judgments. First is procuring the state-court default judgments "without

proof of ownership of the debt." Next is procuring the judgments without "a legal right to collect

the debt," which may or may not be separate from the first. Second (or third) is procuring the

judgments through pleadings that were deceptive in that the pleadings did not reveal that Gurstel

Chargo, Gurstel, and Chargo—not TEM—were the real parties in interest.[3]

---

[3]        Although the Second Amended Complaint lists three sections of the FDCPA—§ 1692d,
§ 1692e, and § 1692f—upon close inspection Plaintiffs' claimed FDCPA violations sound under
only one section—§ 1692e. That section prohibits a debt collector from using "false, deceptive,
or misleading representation or means in connection with the collection of any debt." 15 U.S.C.
§ 1692e. False or misleading representations form the foundation of Plaintiffs' claim that
Defendants violated the FDCPA by bringing collection suits without proof of ownership of the
debt, without a legal right to the debt, and with misleading affidavits and pleadings. The other
two sections——§ 1692d and § 1692f—do not apply. Under § 1692d, a debt collector is
prohibited from engaging "in any conduct the natural consequence of which is to harass, oppress,
or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The
allegedly abusive conduct is Defendants filing lawsuits and pursuing default judgments without
certain documentation. However, the "filing of a lawsuit is not the kind of conduct that was
intended to be covered by section 1692d." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330
(6th Cir. 2006) (quotation omitted). Finally, §1692f prohibits a debt collector from using "unfair
or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "Congress
enacted Section 1692f to catch conduct not otherwise covered by the FDCPA." *Baker v. Allstate
Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008); *see Taylor v. Heath W. Williams,
L.L.C.*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007) ("A complaint will be deemed deficient
under [§ 1692f] . . . if it does not identify any misconduct beyond that which Plaintiffs assert
violate other provisions of the FDCPA." (quotation omitted)). Because § 1692e already prohibits
the complained-of conduct in this case, Plaintiffs do not have a claim under § 1692f. *See
Gnoinska v. Messerli & Kramer, P.A.*, Civ. No. 12-947, 2012 WL 5382180, at *3 (D. Minn.
Nov. 1, 2012) (concluding that because plaintiff's § 1692f claim was based on the same acts
alleged as violations of § 1692d and §1692e, plaintiff's § 1692f claim was deficient as a matter
of law).

Before reaching the merits of Plaintiffs' FDCPA claim, Defendants argue that Ness's FDCPA claim is barred by the statute of limitations. Then Defendants argue that even if Ness's claim is not barred, she and the remaining Plaintiffs have failed to state a claim upon which relief may be granted. The Court will address these arguments in turn.

### 1.  Statute of Limitations

Under the FDCPA's statute of limitations, an action must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The statute of limitations is triggered in the Eighth Circuit when the debt collector had "its last opportunity to comply with the FDCPA." *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992). The FDCPA's statute of limitations is jurisdictional and cannot be equitably tolled. *Id.* at 262; *Thompson v. Nat'l Credit Adjusters, LLC*, Civ. No. 10-2307, 2011 WL 6003955, at *2 (D. Minn. Nov. 30, 2011).

Ness's FDCPA claims are based on Defendants' filing of the state-court collection action and their request for default judgment. The request for default judgment, the later of the two events, occurred on October 22, 2010, more than one year before Ness brought this action. The state court entered the default judgment on November 10, 2010, which also is more than one year before Ness brought this action. Although paragraphs of the Second Amended Complaint are devoted to Defendants' actions during discovery and the state-court summary-judgment hearing in September 2011, Ness does not appear to allege that Defendants' conduct in discovery or at the summary-judgment hearing violated the FDCPA. Because all of the conduct that Ness alleges violated the FDCPA occurred more than one year before Ness brought this action, Ness's FDCPA claim is barred by the one-year statute of limitations.

Attempting to keep her FDCPA claim alive, Ness makes a "continuing injury" argument, by which the Court is not persuaded. Ness suggests that because she was injured until the default judgment against her was vacated in April 2011—and because she is being injured to this day because Defendants have not provided to her the original credit agreement and assignment documents—the FDCPA's statute of limitations has not yet been triggered. But Ness's argument finds no support in the law. The purpose of the FDCPA was to "regulat[e] the conduct of debt collectors," *Mattson*, 967 F.2d at 261, so the focus of the statute-of-limitations analysis is on when the debt collector's allegedly violative *conduct* occurred, not on when a plaintiff's *injury* has been alleviated.

Even if the statute of limitations did not bar Ness's FDCPA claim, that claim—along with the similar FDCPA claim of the remaining Plaintiffs, Peters and Xiong—would have to be dismissed pursuant to Rule 12(b)(6), as discussed below.

**2. Alter Ego**

One of Plaintiffs' core assertions is that TEM was not the real party in interest in the state-court proceedings because it is an alter ego of Gurstel Chargo, Gurstel, and Chargo. Determining whether an entity is an alter ego under Minnesota law requires "(1) analyzing the reality of how the corporation functioned and the defendant's relationship to that operation, and (2) finding injustice or fundamental unfairness." *Minn. Power v. Armco, Inc.*, 937 F.2d 1363, 1367 (8th Cir. 1991).

> The first prong focuses on the shareholder's relationship to the corporation. Factors that are significant to the assessment of this relationship include whether there is insufficient capitalization for purposes of corporate undertaking, a failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of the

> corporation as merely a facade for individual dealings. The second prong requires showing that piercing the corporate veil is necessary to avoid injustice or fundamental unfairness.

*Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997) (citations omitted).

Plaintiffs do not make any factual allegations about the existence of factors under the first prong that would support an alter-ego claim. Instead Plaintiffs allege ownership of TEM by Gurstel and Chargo; an identical address for TEM's and Gurstel Chargo's principal places of business; and the flow of profits from TEM to Gurstel, Chargo, and Gurstel Chargo—factors that the Minnesota Supreme Court has not identified as significant when assessing a shareholder's relationship to a business entity for purposes of determining whether an entity is an alter ego. Plaintiffs have not alleged that Gurstel, Chargo, and Gurstel Chargo disregarded the corporate form. The Court concludes that Plaintiffs have failed to state a claim that TEM was the alter ego of Gurstel, Chargo, and Gurstel Chargo, and therefore not the real party in interest in the state-court debt-collection suits. *See generally Johnson v. Evangelical Lutheran Church in Am.*, Civ. No. 11-23, 2011 WL 2970962, at *6–7 (D. Minn. July 22, 2011) (dismissing claim to pierce the corporate veil because beyond one conclusory allegation of undercapitalization, the first prong was not supported by any factual allegations).

### 3. Bringing Suits Without Proof of Ownership of Debt or Legal Right to Collect Debt

The Court now turns to Plaintiffs' claims that Defendants violated the FDCPA when they procured state-court default judgments "without proof of ownership of the debt or a legal right to collect the debt." Plaintiffs appear to assert that under Minnesota law, Defendants could not bring a debt-collection suit, or at least could not bring the suit to judgment, unless Defendants had the following documents to prove assignability: (1) the original credit agreement between

the consumer and the original creditor and (2) the documents referenced in bills of sale between the original creditor and Absolute and between Absolute and TEM.

Plaintiffs' contention about what is required under Minnesota law to prove assignability is a contention of law rather than of fact. Plaintiffs' only support for this argument is the transcript from Ness's summary-judgment hearing in state court, where the state-court judge declined to accept into evidence the document that Defendants alleged was Exhibit A, the document referenced in the bills of sale. Minnesota law, however, does not require any particular form of proof of debt or a right to collect a debt. [4] The Minnesota Court of Appeals has recognized that debt collectors are not required to attach the original credit agreement and a copy of a bill of sale to a complaint in a debt-collection suit. *Portfolio Recovery Assocs., LLC v. Dahlen*, No. A11-1906, 2012 WL 3289805, at *3 (Minn. Ct. App. Aug. 13, 2012). [5] Although the court of appeals decision has no precedential value because it is unpublished, *see* Minn. Stat. § 480A.08, subd. 3(c), it is persuasive and consistent with established Minnesota law. *See Life*

---

[4]     In their brief, Plaintiffs cite no Minnesota cases or law to support their argument about what a debt collector is required to prove to collect a debt. Instead, Plaintiffs cite to cases from Illinois, New York, New Jersey, and Texas where the courts either applied state law or the Federal Rules of Bankruptcy Procedure.

[5]     Several courts have held that a debt collector does not violate the FDCPA by commencing a lawsuit without attaching to the complaint proof of ownership of the debt. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006) (stating that filing a lawsuit without the immediate means of proving the debt is not a violation of the FDCPA); *Carlson v. Credit Mgmt. Servs., Inc.*, No. 4:11CV3173, 2012 WL 869946, at *4 (D. Neb. Mar. 14, 2012) (noting that claim that debt collector needed to offer proof that it owned the debt at the time it filed the suit lacked merit); *Johnson v. BAC Home Loans Serv., LP*, 867 F. Supp. 2d 766, 781 (E.D. N.C. 2011) ("[I]nsufficient evidence or documentation claims based on the filing of a state court complaint do not constitute viable claims under section 1692e." (quotation omitted)); *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006) (holding that filing a lawsuit supported by a client's affidavit attesting to the existence and the amount of debt is not a false representation, especially when plaintiff "does not allege that anything in the state court complaint was false, or that the complaint was baseless. She essentially alleges that more of a paper trail should have been in the lawyers' hands or attached to the complaint.").

*Rehab Servs., Inc. v. Allied Prop. & Cas. Ins. Co.*, 616 F. Supp. 2d 924, 938 (D. Minn. 2007) (noting that unpublished Minnesota Court of Appeals cases can have persuasive value).

Under Minnesota law, contract rights—in the absence of statutory or contractual prohibitions or unless they are for matters involving a personal trust—are freely assignable. *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 270 (Minn. 2004); *see Swiss Reins. Am. Corp. v. SuperValu, Inc.*, 743 F. Supp. 2d 1050, 1057 (D. Minn. 2010) ("[T]he default under Minnesota law is that contracts are freely assignable absent some language to the contrary."); *Wilkie v. Becker*, 128 N.W.2d 704, 707 (Minn. 1964) ("The general rule is that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable." (quotation omitted)). Only contract rights could potentially affect the assignability of the original credit agreements here. Plaintiffs appear to argue that the burden is on the party who brings a collection suit to disprove the existence of an exception to the general rule of assignability. That proposition, however, finds no support in Minnesota's law, or indeed general principles of contract law. To the contrary, the burden is on the party who asserts nonassignability to demonstrate that the contract contains some language "'manifesting the intention of the parties that it shall not be assigned.'" *Swiss Reins.*, 743 F. Supp. 2d at 1058 (quoting *Life Rehab. Servs.*, 616 F. Supp. 2d at 934); *see* Brent A. Olson, 20 *Minnesota Practice Business Law Deskbook* § 7:48 & n.5. Plaintiffs do not dispute that they owe the debt or that TEM owns their debt; nor do they assert that their original credit agreements contain nonassignability language. They assert merely that it is the obligation of the creditor to have the original agreement in hand before a collection lawsuit may be brought to judgment. That is not the law.

The Second Amended Complaint alleges that "a good faith reading of Minnesota Rule of Civil Procedure 55.01(e) required Defendants to attach the documents proving assignment and ownership of the debt" to the requests for default judgment. (SAC ¶¶ 62, 84, 102.) But again Plaintiffs' contention finds no support in Minnesota law. Rule 55.01(e) requires the filing of a "promissory note, draft or bill of exchange" when "judgment is entered in an action upon a promissory note, draft or bill of exchange." Minn. R. Civ. P. 55.01(e). But the state-court debt-collection actions were not upon a promissory note, draft or bill of exchange. Minnesota only requires that in a suit "upon a contract for the payment of money only"—which is the case here—a party moving for default judgment submit "an affidavit of the amount due" to the court administrator and the administrator "shall enter judgment for the amount due." Minn. R. Civ. P. 55.01(a). There is simply no requirement in Minnesota law that debt collectors attach particular documents proving assignability or ownership to either a complaint or a motion for default judgment.

Plaintiffs go one step further, however, and assert upon information and belief that defendants could *never* obtain documents showing that Plaintiffs' debts were validly transferred and assignable. Setting aside the fact that Minnesota law presumes that contracts are assignable, these claims are purely speculative. Federal Rule of Civil Procedure 8(a) requires that a complaint contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face, which requires a plaintiff to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. With regard to Ness, the Second Amended Complaint gives a factual basis for its assertion that Defendants could never obtain documents showing assignability: "[D]efendants

were unable to produce these documents when asked to do so." (SAC ¶ 33.) But the transcript[6] of Ness's state-court summary-judgment hearing reveals that Defendants did provide to the state court and to Ness what is described as the bills of sale between Wells Fargo and Absolute and between Absolute and TEM. The transcript also shows that Defendants attempted to introduce into evidence Exhibit A, the document referenced in the bills of sale that listed the accounts sold, but that the state court rejected that document because Defendants did not properly authenticate it. A state court's decision not to admit a document into evidence based on the strength of authentication (especially in the context of a legal argument rather than an evidentiary hearing) says nothing about whether admissible documentation of transfer and assignability was obtainable. *See Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012) (rejecting a rule "that a debt collector's fact allegations are false and misleading for purposes of § 1692e when rejected as not adequately supported in a collection suit"). The Second Amended Complaint also alleges that upon information and belief Defendants could never obtain the necessary documentation of the ownership and assignability of Peters's and Xiong's debts. There are no factual allegations in the complaint from which the Court can make a reasonable inference that Defendants could never obtain documents showing assignability and ownership. *See Nelson v. Bank of N.Y. Mellon*, Civ. No. 12-1096, 2012 WL 4511165, at *3 (D. Minn. Oct. 1, 2012) (dismissing claim that assignment of mortgage was invalid because claim was based on information and belief and plaintiffs gave no indication that belief was reasonable or supported

---

[6]    On a motion to dismiss, a court "generally may not consider materials outside the pleadings," but "[i]t may . . . consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F.3d 978, 982 (8th Cir. 2008) (quotation omitted). The transcript of the state-court summary-judgment hearing is both referenced and quoted in the Second Amended Complaint and is therefore necessarily embraced by the complaint.

by any facts). Moreover, the Second Amended Complaint alleges that with Peters's and Xiong's

debt, Defendants could not obtain Exhibit A, which the Second Amended Complaint implies is

the same exhibit that Defendants *had* obtained and attempted to introduce into evidence in

Ness's summary-judgment hearing. Therefore, Plaintiffs have failed to state a claim that

Defendants could never obtain documentation showing valid transfer and assignability.[7]

Relying on their assertion that Defendants could never obtain sufficient documentation,

Plaintiffs assert that Defendants falsely attested to personal knowledge of the debts in affidavits

submitted with the motions for default judgment. But again, Plaintiffs plead no facts that would

permit a reasonable inference that Defendants had no personal knowledge of the debts. This is

unlike the case Plaintiffs rely on so heavily in their papers, *Sykes v. Mel Harris & Assocs., LLC*,

757 F. Supp. 2d 413 (S.D.N.Y. 2010). In that case, the plaintiffs alleged that the defendants'

affiant signed the "vast majority of the approximately 40,000 affidavits of merit" filed each year

attesting to "personal knowledge of key facts." 757 F. Supp. 2d at 420. Assuming 260 business

days per year, the affiant must have personally issued an affidavit once every three minutes. *Id.*[8]

---

[7]     Plaintiffs brought to the attention of the Court *Samuels v. Midland Funding, LLC*, Civ.
No. 12-0490-WS-C, 2013 WL 466386 (S.D. Ala. Feb. 7, 2013). In that case, the plaintiff alleged
that the defendant–debt collector purchased debt in bulk and received information about the
purchased debts that was too limited to establish the validity of the debt; that the plaintiff did not
owe the defendant a debt; and that when the plaintiff and the defendant went to trial, the
defendant had no witnesses or evidence to prove that the plaintiff owed the defendant a debt.
2013 WL 466386, at *1. The plaintiff commenced an action against the defendant, claiming the
defendant violated the FDCPA, and the court denied the defendant's motion to dismiss. *Id.* at *2,
*8. Significantly, the court did not "definitively resolve whether [the FDCPA] provides the
plaintiff a cause of action" on his theory that defendant filed and prosecuted collection actions
"while knowing that it lack[ed] evidence to prove its claim and knowing that it [would] not
obtain or even try to obtain such evidence." *Id.* at *3, 8. The Court does not consider *Samuels*
analogous to the situation alleged here, where Plaintiffs do not deny that they owe a debt or that
Defendants own the debt.

[8]     In *Sykes*, the debt collector's practice that was integral to its fraudulent scheme was
colorfully named "sewer service"—the practice of not serving a consumer the summons and

The plaintiffs in *Sykes* alleged some facts that would allow a court to draw a reasonable inference that the affiant had no personal knowledge of the debt; Plaintiffs do not make any such allegations here. [9]

The Court concludes that Plaintiffs have failed to state a claim under the FDCPA.

## C. Champerty (Count II)

In the Second Amended Complaint, Plaintiffs bring a claim of champerty, alleging that "TEM is an alter ego, a fabricated client incorporated and owned by Gurstel and Chargo of Gurstel Chargo, the true parties in interest" and "Defendants' champerty—fabricating a client to

---

complaint and falsely attesting to service in the application for default judgment against the consumer. 757 F. Supp. 2d at 419. The Second Amended Complaint alleges nothing of that sort.

[9]     The Court does not consider *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016 (S.D. Ohio 2007), persuasive. In that case, the plaintiff alleged that the defendant filed many hundreds of lawsuits each year, that defendant attached boilerplate affidavits to the complaints, and that defendant knew that its affiants lacked personal knowledge of most of the statements in the affidavits. 480 F. Supp. 2d at 1019–1020. The plaintiff survived a Rule 12(b)(6) motion, but *Williams* was decided under the old "no set of facts" standard for Rule 12(b)(6) motions, a standard that the Supreme Court has since retired. *See Twombly*, 550 U.S. at 563 (noting that the "no set of facts" language "has earned its retirement").

Plaintiffs also allege that Defendants violated the FDCPA by misrepresenting that TEM directly purchased the debt from the original creditor. Plaintiffs allege that Defendants filed state-court complaints against them with the statement that TEM "is the owner of certain accounts of [the original creditor] including the account of the [consumer]" (SAC ¶¶ 41, 79, 97) and that "Defendants did not identify in the Complaint that the alleged debt was sold by [the original creditor] to Absolute, then by Absolute to TEM." (*Id.* ¶¶ 41, 79, 97.) To determine whether a debt collector's representation is false or misleading under § 1692e, the Eighth Circuit employs an unsophisticated consumer test. *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002). "The unsophisticated consumer test is a practical one, and statements that are merely susceptible of an ingenious misreading do not violate the FDCPA." *Id.* at 1056 (quotation omitted). Here, the statement that TEM is the owner of certain accounts of the original creditor is not literally false, and an unsophisticated consumer would likely not be interested in all the intermediaries who purchased the debt. *See id.* at 1053, 1056 (noting that a statement in a debt-collection letter that if consumer did not consent to appear voluntarily, the debt collector's "only alternative" would be to request personal service of process by a city constable was not misleading under the FDCPA because "an unsophisticated consumer would not likely be interested in a listing of all types of service of process that [the debt collector] could theoretically employ"). Therefore, Defendants' statements in the state-court complaints about TEM's ownership of Plaintiffs' debts are not misleading under § 1692e of the FDCPA.

predatorily scavenge the financial bones of the elderly and poor—is against public policy, unethical, and unlawful as a matter of law." (SAC ¶¶ 123–24.)

Champerty is "an agreement between a stranger to a lawsuit and a litigant by which the stranger pursues the litigant's claims as consideration for receiving part of any judgment proceeds." *Johnson v. Wright*, 682 N.W.2d 671, 675 (Minn. Ct. App. 2004) (quotation omitted). "The general purpose of the law against champerty . . . was to prevent officious intermeddlers from stirring up strife and contention by vexatious or speculative litigation which would disturb the peace of society, lead to corrupt practices, and pervert the remedial process of the law." *Huber v. Johnson*, 70 N.W. 806, 807 (Minn. 1897). Champterous contracts are against public policy. *Id.*

Champerty, however, is not an independent cause of action under Minnesota law. Rather, it is used as a defense in a contract action where the defendant, a party to a contract, seeks to have a contract declared void or unenforceable as a matter of public policy. *See Hackett v. Hammel*, 241 N.W. 68, 69 (Minn. 1932); *Holland v. Sheehan*, 122 N.W. 1, 1–2 (Minn. 1909); *Gammons v. Honerud*, 84 N.W. 911, 911 (Minn. 1901); *Gammons v. Johnson*, 78 N.W. 1035, 1036–37 (Minn. 1899); *Gammons v. Gulbranson*, 80 N.W. 779, 779 (Minn. 1899); *Huber*, 70 N.W. at 806–807; *Johnson*, 682 N.W. at 674–75.[10] Here, Plaintiffs do not allege the existence of any contracts with the Defendants. They are attempting to assert champerty as an independent

---

[10]     Plaintiffs argue that the court in *Spine Imaging MRI, L.L.C. v. Liberty Mut. Ins. Co.*, 818 F. Supp. 2d 113, 1143 (D. Minn. 2011) recognized champerty as an independent cause of action because it declared that "the claims and counterclaim do not sufficiently allege the elements of this cause of action." However, the court's discussion of champerty was brief, and it cited no support for its implicit recognition that champerty is a stand-alone cause of action. The Court does not consider *Spine Imaging* persuasive in light of clear Minnesota case law that dates back to the nineteenth century. Plaintiffs also argue that Gurstel and Chargo violated Minnesota Rule of Professional Conduct 1.8. But "a violation of the Rules of Professional Conduct is not intended to provide a basis for civil liability." *Maus v. Toder*, 681 F. Supp. 2d 1007, 1016 (D. Minn. 2010).

cause of action, which is not cognizable under Minnesota law. Therefore, the Court dismisses Count II of the Second Amended Complaint.

### D. Conspiracy to Procure Fraudulent Judgments (Count V)

Plaintiffs also allege that Defendants conspired to procure fraudulent default judgments. (SAC ¶ 134.) "To properly plead civil conspiracy, [the plaintiff] must allege sufficient facts to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose and took concerted actions to achieve that purpose." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 838–39 (D. Minn. 2012). "[A] plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together to injure the plaintiff." *Id.* at 839 (quotation omitted).

The Second Amended Complaint contains no allegation that there was any type of agreement among Defendants to injure Plaintiffs. Plaintiffs do allege that TEM is an alter ego of Gurstel Chargo, Gurstel, and Chargo, but Plaintiffs do not support that legal conclusion with sufficient facts. Therefore, Plaintiffs fail to state a claim for civil conspiracy, and the Court dismisses Count V of the Second Amended Complaint.

### E. Abuse of Legal Process (Count VI)

Plaintiffs also bring a claim for abuse of process. "The essential elements for a cause of action for abuse of process are the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not." *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997) (citing *Hoppe v. Klapperich*, 28 N.W.2d 780, 786 (Minn. 1947)). Plaintiffs claim that Defendants abused the legal process by engaging in litigation against Plaintiffs "[w]ithout documents showing assignability and valid ownership of the debt

and standing to sue . . . and deceptive pleadings." (SAC ¶ 136.) Plaintiffs also allege that

"Defendants had an ulterior motive or purpose." (*Id.* ¶ 138.)

The Second Amended Complaint offers nothing more than "a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555. It includes no factual allegations that

Defendants acted with an ulterior purpose when they pursued collection actions against

Plaintiffs. Because Plaintiffs fail to state a claim for abuse of legal process, the Court dismisses

Count VI of the Second Amended Complaint.

### F.  Malicious Prosecution (Count VII)

Plaintiffs also bring a claim for malicious prosecution. "[T]o state a claim for malicious

prosecution a plaintiff must demonstrate that: (1) the action was brought without probable cause

or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must

be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of

the defendant." *Kellar*, 568 N.W.2d at 192. Plaintiffs claim that Defendants engaged in malicious

prosecution by obtaining default judgments "[w]ithout documents showing assignability and

valid ownership of the debt and standing to sue [Plaintiffs], and deceptive pleadings." (SAC ¶

140.)

The Second Amended Complaint contains no allegation that Defendants instituted the

state-court collection actions with malicious intent or without a reasonable belief that they could

prevail. Plaintiffs fail to state a claim for malicious prosecution, so the Court dismisses Count

VII of the Second Amended Complaint.

### G.  Liability for Treble Damages (Count VIII)

Plaintiff alleges that under Minn. Stat. § 481.07 and § 481.071, Defendants Gurstel

Chargo, Gurstel, and Chargo are liable for treble the amount of the default judgments entered

against Ness, Xiong, Peters, and the class. These statutes allow an injured party to recover treble damages from attorneys who have "intent to deceive a court or a party to an action or judicial proceeding" or who are "guilty of any deceit or collusion." Minn. Stat. §§ 481.07, .071. These statutes create penalties, not independent causes of action. *Handeen v. Lemaire*, 112 F.3d 1339, 1355 (8th Cir. 1997) (approving of district court's reasoning that the two statutes "merely authorize treble damages in certain civil suits and do not create independent grounds for relief"); *Love v. Anderson*, 61 N.W.2d 419, 422 (Minn. 1953) (noting that section 481.07 "deals with penalties for deceit or collusion. It does not create a new cause of action. The common law gives the right of action and the statute the penalty.") Because the Court has dismissed all of Plaintiffs' underlying tort claims, there are no claims left to which a statutory penalty would apply. Therefore, the Court dismisses Count VIII of the Second Amended Complaint.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss Second Amended Complaint [Docket No. 58] is GRANTED.

2. The Plaintiff's Complaint is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 20, 2013

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
